[Civ. No. 34606. Second Dist., Div. Four. Apr. 29, 1970.]

G. M. RUSSELL, Plaintiff and Appellant, v.
UNION OIL COMPANY OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Aidlin, Martin & Mamakos and Arthur L. Martin for Plaintiff and Appellant.

Douglas C. Gregg, Robert W. Putnam and T. Richard Brown for Defendant and Respondent.

## OPINION

**JEFFERSON, J.**—Plaintiff landowner filed an action against defendant Union Oil Company seeking to recover $155,400 pursuant to a purported license agreement between plaintiff and Union which allegedly permitted Union to continue the utilization of a private telephone line over plaintiff's land. Judgment was rendered in favor of Union in the court below. The court concluded that no license agreement was in effect since the proffered license was never accepted by Union; that Union thereafter acquired a prescriptive easement for the telephone line. Plaintiff appeals from the judgment.

Pursuant to stipulation, the matter was submitted to the trial court on an "Agreed Statement of Facts and Testimony," a summary of which follows: Plaintiff was the owner of 40 acres of unimproved land. For many years the Southern California Edison Company had maintained six utility poles on his land along the east-west boundary. On the poles were strung power lines. In the latter part of September 1957, pursuant to an existing agreement with Edison, Union attached a single one-half inch diameter private telephone line on the poles and ran the line to a warehouse which it maintained on adjoining land. The telephone line was strung about 25 feet above ground level. Edison's power lines were located at a higher level, between 35 and 40 feet above the ground. Plaintiff voiced no objection to Union's line until July 1961, almost four years after its installation. According to plaintiff, he had not noticed the line before that time, although he or persons working under his direction crossed directly under it at least once a day to operate oil wells which he maintained on his property to the north of the line.

In July 1961, plaintiff notified Union that Edison had no right to have its poles and lines on his land, and consequently, that Edison had no authority to grant Union permission to place and maintain a telephone line on the poles. Plaintiff thereafter met with Union representatives. However, attempts at a settlement of the dispute proved unsuccessful. During the settlement negotiations, Union had offered to pay plaintiff $6 a year (the reported standard rate for pole attachment rentals), for permission to maintain the telephone line, which offer was rejected by plaintiff. The latter then ordered Union to remove the line. Union did not do so but continued to assert its right to maintain the line under the permission given by Edison.

On August 7, 1962, less than two months short of five years from the time Union had installed the telephone line and 13 months after the settlement negotiations fell through, plaintiff sent the following letter to the president of Union:

"Dear Mr. Tower:

It is my understanding that recently your company has placed and now continues to use telephone wires which have been placed upon my land [description of land omitted].

This conduct by your company constitutes a willful trespass for which there is no authority in law or fact. Compensation for such trespass at the rate of $150.00 per day is demanded herewith. Interest at the legal rate upon all unpaid daily charges will be added.

Demand is made that you cease and terminate the use of the lines forthwith. It is my understanding that you purport to claim authority to use said lines under some type of grant given you by the Southern California Edison Company. This letter is to further inform you that said Edison Company has no right, title or interest in said land, and any purported grant given you by said Edison Company is without force or effect.

I am willing to permit you a revocable license to continue your use of these facilities to the extent that the same is presently being used. This revocable license is contingent upon the payment to me of the sum of $150.00 per day for each day that such use continues, said sums to be payable daily and any unpaid sums to collect interest at the legal rate.

Your continued use of these facilities will constitute your acceptance of this revocable license.

Your remittances should be made payable to the undersigned at [address omitted].

Yours truly,

G. M. Russell"

Union did not respond to plaintiff's letter. On November 2, 1962, attorneys representing plaintiff wrote to Union's president demanding payment in accordance with the terms of the revocable license proposed. In a reply letter dated November 9, 1962, Union's representative reiterated that, in maintaining its line, Union was exercising its rights under its license with Edison. The letter expressly repudiated the existence of any license agreement between plaintiff and Union. Plaintiff filed this action on November 30, 1962. Edison was joined as a defendant but was never served.

At the trial plaintiff stipulated that Edison possessed a prescriptive easement to maintain its poles and power lines on his property.

In June 1965, before the case went to trial, Union voluntarily removed the telephone line when it relocated the warehouse serviced by the line.

Plaintiff elected to seek recovery from Union on the single theory that a

valid license agreement existed between himself and Union. The $155,400 in damages claimed represented nonpayment of the $150 daily license fee from August 7, 1962 (the date of the license offer) through June 8, 1965 (when Union removed the line), plus interest.

It was Union's position at the trial, as it was from the time the dispute arose, that it had the right to maintain the line under the license received from Edison. The court below disagreed. In its memorandum decision denying plaintiff recovery, the court stated that, although it was conceded that Edison had an easement entitling it to place its poles and power lines on plaintiff's land, Union's attaching the phone line created an additional and different burden; that, although the burden was "of little significance," it was nevertheless technically a trespass. The court, however, found that no license agreement resulted from plaintiff's letter and Union's failure to respond thereto, and that Union acquired a prescriptive right to an easement by occupying the property for the statutory five-year period.

Plaintiff contends that he was entitled to treat Union's continued use of his land after he sent his order to Union to quit or in the alternative to remain as a licensee for the stated daily fee, as an acceptance of the revocable license, thus entitling him to recovery of the stated contract price.

Assuming without deciding that Union was using plaintiff's land without any right to do so, its action thus constituting a trespass, we conclude that the evidence supports the trial court's finding that plaintiff failed to establish his entitlement to recovery on an express contract theory. As already pointed out, plaintiff elected to proceed only on the theory that an express license agreement was in effect and never sought to prove either damages for trespass or the reasonable value of the use of his property.

It is fundamental that every contract requires mutual assent or consent. (Civ. Code, § 1550; 1 Witkin, Summary of Cal. Law (1960) p. 39.) The determination whether it is present is made by the use of an objective test, the manifestations or expressions of assent being controlling. (*King* v. *Stanley*, 32 Cal.2d 584, 591 [197 P.2d 321].) "Mutual assent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." (1 Witkin, Summary of Cal. Law (1960) p. 39.) **(3)** Acceptance of an offer, which may be manifested by conduct as well as by words, must be expressed or communicated by the offeree to the offeror. (1 Witkin, Summary of Cal. Law (1960) pp. 64-65.)

The record shows that plaintiff was on notice at all times that Union was claiming authorization to maintain the telephone line under color of right arising from its license agreement with Edison. Union took no new action

nor in any way varied its position in the face of plaintiff's "get off or pay" edict of August 7, 1962. Plaintiff's proposal was made nearly five years after Union had installed the line. The license fee proposed had absolutely no relation to the reasonable rental value of the property invaded. The additional burden on plaintiff's land caused by the line was, as described by the court below, "of little significance," as evidenced by the fact that plaintiff never even noticed it for nearly four years. ▮ Union had previously offered to pay plaintiff $6 per year (the reported going rate for such licenses) to settle the dispute. Under the circumstances presented, plaintiff could not have reasonably understood that the combination of Union's failure to reply to his proposal and its continued maintenance of the line, manifested an acceptance of such proposal. He was thereafter expressly informed of this fact when Union replied to his attorney's follow-up letter demanding payment.

Plaintiff makes the argument that, because Union's conduct was found to be tortious, he should be entitled to treat Union's continued maintenance of the line as necessarily connoting an assent to his license offer. He cites as controlling section 72(2) of the Restatement of Contracts, which states: "Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept."

No California case has applied section 72(2) to any situation even remotely resembling the situation in this case.

Plaintiff cites a Montana case, *Russell* v. *Texas Co.* (9th Cir. 1956) 238 F.2d 636, cert. den. 354 U.S. 938 [1 L.Ed.2d 1537, 77 S.Ct. 1400], in support of his position. In that case the defendant was tortiously using "rock, water and roads" on plaintiff's land as part of its mining operations on adjoining land.[1] Plaintiff sent defendant an offer of a revocable license to use his land in connection with defendant's operations on the adjoining land, for the sum of $150 per day (the exact amount of the license proposal here). As here, the offer for a license contained the proviso that the continued use of the property would constitute an acceptance of the offer. The circuit court upheld the trial court's finding that defendant's continued use of the land after receipt of the revocable offer, constituted an acceptance. Plaintiff was awarded approximately $4,000 in damages pursuant to the agreement for a use lasting slightly more than three weeks. Although the

---

[1]Defendant had a mineral rights easement on plaintiff's land but such rights did not include the right to use the surface of plaintiff's land in aid of operations on the adjoining lands.

appellate court quoted approvingly of Restatement, section 72(2), it pointed out that, under the facts of the case, the plaintiff was reasonably led to believe that defendant had accepted the proposal by its continued use of his property. As indicated above, this was certainly not the situation in the instant case. The Montana case is thus clearly distinguishable.

Under the facts presented in the case at bench, we conclude that, since the evidence shows that plaintiff must have been aware that defendant's acts in continuing to assert its right to the easement, did not signify an acceptance of the revocable license proposed, plaintiff has failed to establish his entitlement to recovery on a contract theory.

The judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1970.