[Civ. No. 26404. Fourth Dist., Div. One. Apr. 20, 1982.]

CALIFORNIA FOOD SERVICE CORP., INC., et al., Plaintiffs and Appellants, v.
GREAT AMERICAN INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Long & Levit, John B. Hook and David W. Evans for Plaintiffs and Appellants.

Thornton, Taylor & Downs and Jerome F. Downs for Defendant and Respondent.

## OPINION

**WIENER, J.**—In practical terms, the question in this appeal is which of two insurers, defendant Great American Insurance Company or Highlands Insurance Company, should pay the $32,948 in damages caused by fire to a leased restaurant building in Santa Rosa. Before this simple question may be answered, we must determine (1) whether plaintiffs, California Food Service Corp., Inc. and John D. Challas, its principal shareholder (collectively CFS) had an insurable interest in the leased premises, (2) whether CFS' action is properly viewed as one for equitable subrogation, and (3) if so, whether the doctrine of equitable contribution should apply.

As we shall explain, we have concluded the court erred in finding CFS had no insurable interest in the subject property. The trial court, however, correctly determined the action, in essence, was a subrogation claim barred by the rule in *Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506 [64 Cal.Rptr. 187]. But although not entitled to a full subrogation claim, we nonetheless conclude the doctrine of equitable contribution does apply. We therefore decide the fire-related damages must be apportioned equally between the two insurance companies. Accordingly, we reverse the judgment with instructions for the court to enter judgment in favor of CFS (for Highlands' benefit) for $16,474.

### Factual and Procedural History

Sandy's Systems, Inc. (Sandy's) is a wholly owned subsidiary of Hardee's Food Systems, Inc. (for convenience, Hardee's and Sandy's are collectively referred to as Sandy's). On May 26, 1967, Sandy's leased the property at 1810 Mendocino Avenue, Santa Rosa, as a fast food restaurant. As required by the lease, Sandy's bought a fire insurance policy from Highlands Insurance Company.

On July 8, 1972, Sandy's and CFS signed a letter of intent in which CFS agreed to buy Sandy's assets and leasehold rights in the Santa Rosa restaurant operation. Under the terms of the letter, CFS agreed to assume all of Sandy's obligations under the lease including the purchasing of fire insurance for the benefit of the building's owners.

The trial court found the "letter of intent" required several occurrences to effectuate the transfer from Sandy's to CFS, among them:

"(a) execution of two promissory notes, aggregating $33,834.05, by CFS; (b) payment in cash by CFS for the existing inventory of food and sundry equipment and supplies; (c) payment of rent by CFS to $1,175.00 per month upon the taking of possession of the premises; (d) the existing lease between Sandy's and the owners of the premises was to be assigned by Sandy's to CFS, and a sublease was to be executed; (e) Sandy's to grant a franchise to CFS." On September 1, 1972, CFS entered into possession of the Santa Rosa property, continuing to operate the business as a restaurant. A fire insurance policy specifically covering the building was issued to CFS by Great American. Most of the conditions noted above had not yet occurred. CFS had attempted to pay for existing inventory, but the drawee bank failed to honor CFS' check.

CFS nevertheless continued to operate a restaurant on the premises for nearly three months without objections from Sandy's. On November 22, 1972, the restaurant building was severely damaged by a fire of unknown origin. The building owners looked to Sandy's, their lessee, to cover the cost of repair on the restaurant. Highlands Insurance paid their insured's claim of $32,948. Sandy's and Highlands then sought to recover from CFS. CFS and Sandy's effected a settlement which included Sandy's releasing CFS from liability in exchange for CFS assigning its rights against its insurer, Great American.

Highlands then filed this action in the name of CFS against Great American seeking recovery based upon the fire insurance policy issued by Great American. The case was tried on stipulated facts. Because the court found the action was in essence one for subrogation and CFS had no insurable interest in the restaurant building at the time of the fire, judgment was for Great American. This appeal followed.

Given the undisputed factual record, we exercise our independent judgment in reviewing the propriety of the legal conclusions reached by the trial court.

*Insurable Interest of CFS*

An independent ground for the court's conclusion was that the letter of intent gave CFS no insurable interest in the restaurant building, and thus the fire insurance policy issued by Great American to CFS was invalid under Insurance Code section 280.

■ No person may recover on a policy of insurance unless that person has an insurable interest in the property insured. Insurable interest is defined as: "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured . . . ." (Ins. Code, § 281.) Simply phrased, an insurable interest exists when "the insured has a direct pecuniary interest in the preservation of the property and . . . will suffer a pecuniary loss as an immediate and proximate result of this destruction . . . . [Citation.]" (*Davis v. Phoenix Co.* (1896) 111 Cal. 409, 414 [43 P. 1115].) ■ Here, if CFS had a binding contract with Sandy's to assume Sandy's obligations under the lease—which included the purchase of fire insurance for the benefit of the building's owners—it also had an insurable interest in the destroyed premises.

■ A letter of intent can constitute a binding contract, depending on the expectations of the parties. (*Mann v. Mueller* (1956) 140 Cal.App. 2d 481, 487 [295 P.2d 421]; see also *Gavina v. Smith* (1944) 25 Cal.2d 501, 504 [154 P.2d 681].) These expectations may be inferred from the conduct of the parties and surrounding circumstances. (See *City of Santa Cruz v. MacGregor* (1960) 178 Cal.App.2d 45, 53-54 [2 Cal. Rptr. 727].)

■ Here, the letter of intent signed by Sandy's and CFS contained all the necessary elements to create a binding contract to sublease the property. (See *Levin v. Saroff* (1921) 54 Cal.App. 285, 289-290 [201 P. 961].) One of the terms of that sublease was the requirement that CFS purchase fire insurance. The fact Sandy's allowed CFS to take possession of the premises and to begin operating it as a restaurant strongly suggests both parties considered the terms of the letter of intent as being binding without the need for the execution of additional documents. Certainly were this an action by Sandy's against CFS to recover $1,175 monthly rental, CFS could not claim the absence of a more formal agreement relieved it of the obligation to compensate Sandy's for its actual possession of the premises. We are of the opinion Great American cannot make a similar argument here. Therefore, given the existence of a binding contract, CFS had an insurable interest in the restaurant building which was protected by the fire insurance policy issued by Great American.[1]

---

[1] Highlands also argues Civil Code section 1662, subdivision (b) required CFS to bear the risk of loss once it took possession of the property. Section 1662, subdivision (b) provides where a buyer, after execution of a contract for the purchase and sale of

■ *Subrogation and the Applicability of the Patent*
*Scaffolding Doctrine*

The alternate basis supporting the court's judgment lies in its determination this case is in reality one of subrogation in which Highlands sought to recover for money paid to Sandy's based on the insured's rights against a third party, CFS. Highlands contends, however, the action is not one for subrogation but rather a suit between an insured (CFS) and its insurer (Great American) to determine coverage, liability of CFS having been established by virtue of CFS' settlement agreement with Sandy's. The issue becomes significant because of *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App. 2d 506 in which the court held that an insurer who pays a claim by an insured whom it is required by contract to indemnify is not subrogated to the insured's rights against third parties also contractually liable to indemnify the insured unless the loss involved is causally related to a breach of duty by that third party. (*Id.,* at p. 512.)

When Sandy's originally leased the restaurant building, it agreed with the owners to indemnify them for any loss sustained as a result of a fire in the building. Accordingly, it bought the Highlands insurance policy to satisfy this contractual commitment. When CFS subleased the building from Sandy's, CFS assumed a similar obligation. But because CFS' contract was with Sandy's, its indemnity liability was only to Sandy's. It was Sandy's which still remained liable under the original lease to the owners of the building. Accordingly, CFS' policy with Great American insured its potential liability to Sandy's, not to the owners.

The major flaw in Highlands' argument that this action is not a subrogation claim lies in its contention that Great American's refusal to pay CFS for damage to the building gave CFS an enforceable cause of action against Great American. But since Highlands is claiming com-

---

real property, takes possession of the property, he bears the risk of loss if the property is destroyed notwithstanding the fact legal title has not yet been transferred. Since a lease is merely the purchase of a limited interest in property, Highlands argues Civil Code section 1662, subdivision (b) created an insurable interest in CFS once it took possession of the restaurant building. (See *Tri-State Mutual Grain Dealers Fire Ins. Co.* v. *Morris* (9th Cir. 1959) 268 F.2d 956.)

The problem with Highlands' argument is that application of Civil Code section 1662, subdivision (b) presupposes the existence of a valid contract. We have concluded such a contract existed here, but Civil Code section 1662 would be of no help to Highlands if the letter of intent did not constitute a binding agreement.

pensation for the total building damage, an amount it already paid to the building owners on behalf of Sandy's, Great American would only be liable if Sandy's has an enforceable contractual claim against CFS. It is that essential enforceable claim against a third party (CFS) which forms the basis for a subrogation action. The fact Sandy's compromised its claim against CFS by accepting assignment of CFS' rights against Great American does not change the subrogation nature of the action nor does it preclude Great American from challenging the legal basis of Sandy's claim. Simply put, if Sandy's had no valid claim against CFS, CFS had no valid claim against its insurer.

Whether Sandy's has a valid claim against CFS to which Highlands is subrogated is analogous to the issue in *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d 506. Patent, the nominal plaintiff, agreed to perform certain subcontracting work on a building Simpson was constructing. The subcontract required Patent to furnish scaffolding and other equipment for use at the job site. It further provided that Simpson was to procure fire insurance protection for Patent's equipment. At the time the subcontract was executed, Patent's equipment was already insured pursuant to a general fire insurance policy issued to Patent. When a fire of unknown origin at the job site destroyed certain items of Patent's equipment, Patent discovered Simpson had failed to procure fire insurance as required by the subcontract. When Simpson refused to pay the damage claim, Patent sought compensation from its own insurers who paid for the loss. Those insurers then sought to sue Simpson on a subrogation theory.

The court began by reviewing the elements of a cause of action for equitable subrogation, focusing on the requirements that "[t]he insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer ..." and that "justice requires that the loss should be entirely shifted from the insurer to the party to be charged, whose equitable position is inferior to that of the insurer ...." (256 Cal.App.2d at p. 509.) It noted there was no evidence Simpson caused the fire, hence any liability was necessarily based on Simpson's contractual obligation to indemnify Patent for any loss resulting from fire. In that sense, the court concluded the obligation assumed by Simpson was equivalent to that assumed by Patent's insurers—a contractual obligation to indemnify—and did not place Simpson in an equitably inferior position justifying transfer of the entire loss from Patent's insurers. (*Id.,* at p. 515.)

The court commented that the principle of equitable contribution, although not raised by the parties, might apply to allow liability for the loss to be divided equally between Simpson and Patent's insurers. (*Id.*, at p. 517.)

We agree with the trial judge and view the case here as being controlled by the *Patent Scaffolding* holding.[2] When Sandy's negotiated the original lease with the property owners, it agreed to assume full liability for any damage to the building caused by fire. Sandy's then contracted with Highlands to insure against that precise liability. When CFS agreed to sublease the building, it also contracted to assume liability for fire damage. But since there was no privity of contract between CFS and the building owners, CFS' obligation was in essence the same as Highlands: a contractual obligation to indemnify Sandy's in the event Sandy's was forced to compensate the building owners. As was the case in *Patent Scaffolding*, no contractual provision or public policy gives to Highlands an equitable position superior to that of CFS.[3] Accordingly, Highlands cannot recover the amount of the entire loss of Great American.

---

[2]Highlands points to dicta in *Patent Scaffolding* suggesting a different result might have obtained if both litigants were insurance companies, as is the case here. In explaining its reasoning, the *Patent* court commented, "The contest is not between two insurance companies, each of which has received premiums for bearing the loss which ultimately occurred, but between insurers and a general contractor who received no independent consideration for the assumption of the risk. The insurers, being in the insurance business, are in a position effectively to spread the risk and to gauge their premiums upon their loss experience. Upon the evidence in the record we are unable to say that Simpson occupies a similar position." (256 Cal.App.2d at p. 516.)

We prefer to view this cryptic reference as being directed to the question of whether it was unfair that Simpson bear none of the loss—the court obviously felt it was not—rather than to whether a defendant's status as an insurance company automatically entitles the plaintiff to subrogation rights. To the extent something more is implied, we think it is simply incorrect. The contract with Patent did not require Simpson to self-insure against the risk of fire; Simpson's only obligation was to purchase fire insurance, a readily quantifiable cost which presumably formed part of the basis for the contract with Patent. Thus Simpson did in fact receive "independent consideration for [its] assumption of the risk" in the form of a reduced contract price for Patent's services.

[3]On the other hand, we see no rule of law which would have prevented Sandy's and CFS from contractually specifying that CFS' liability for fire damage was to be primary to that of any other indemnitor of Sandy's. Were that the case, Highlands would presumably have a right of subrogation against CFS and Great American. We take care to again point out, however, that the relevant contract for these purposes is the one between Sandy's and CFS, which establishes CFS' liability as an indemnitor, and not the one between CFS and Great American, which merely establishes Great American's liability to CFS to the extent CFS is liable to Sandy's. (See *ante*, pp. 898-899.) Thus the terms and conditions of the Great American policy are irrelevant to the issue of whether CFS' liability was in any sense primary.

### Highlands' Right to Equitable Contribution

Although concluding subrogation was inapplicable, the *Patent Scaffolding* court did not fail to recognize "the basic injustice that eventually one of the [indemnitors] may have to bear the entire loss." (256 Cal.App.2d at p. 516.) The court, however, went on to suggest a remedy: "The answer probably lies in the fact that all parties below approached the problem on an 'all-or-nothing' basis. Had the insurers claimed equitable contribution rather than equitable subrogation, and had they succeeded in establishing what kind and amount of insurance coverage would have satisfied Simpson's contractual obligation, they may have succeeded in bringing themselves within the principle established in *Continental Cas. Co. v. Zurich Ins. Co.* (1961) 57 Cal.2d 27, 35-38 [17 Cal.Rptr. 12, 366 P.2d 455]. The equitable-contribution principle requires an equitable distribution of the loss among those who share liability for it." (*Id.*, at p. 517.)

The equitable contribution doctrine enunciated in *Continental Cas. Co. v. Zurich Ins. Co., supra*, 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455] is based on the common sense notion that where two indemnitors share equal contractual responsibility for a loss, the selection of which indemnitor is to bear the loss should not be left to the sometimes arbitrary choice of the loss claimant. (See *Patent Scaffolding, supra*, 256 Cal.App.2d at p. 516.) More importantly, the indemnitor should not be given the incentive to avoid paying a just claim in hopes that the claimant will obtain payment from the coindemnitor.[4] (See *Continental Cas. Co. v. Zurich Ins. Co., supra*, 57 Cal.2d at p. 37.)

We find this practical principle applicable on the undisputed facts of the case before us. Highlands requested findings of fact and conclusions of law on this issue which the trial court failed to act upon. Given the pro rata clause in the Highlands' policy, we conclude both Highlands and CFS must bear responsibility for one-half of the stipulated loss of $32,948. Accordingly, because Great American is contractually obligat-

---

[4]We note but are not persuaded by the reasoning in *Fidelity etc. Co. v. Fireman's F. I. Co.* (1940) 38 Cal.App.2d 1 [100 P.2d 364] denying a right of contribution to an insurer paying more than its pro rata share. Numerous decisions over the past 25 years have cast considerable doubt on the logic of the *Fidelity* holding. (E.g., *Meritplan Ins. Co. v. Universal Underwriters Ins. Co.* (1966) 247 Cal.App.2d 451, 464, 466 [55 Cal.Rptr. 561]; *Massachusetts Bonding & Ins. Co. v. Car & Gen. Ins. Corp.* (E.D.Pa. 1957) 152 F.Supp. 477, 482; see also *Continental Cas. Co. v. Zurich Ins. Co., supra*, 57 Cal.2d 27, 37.) To the extent the *Fidelity* rule is possessed of any continuing vitality, we expressly decline to follow it.

ed to indemnify CFS for its liability, Highlands is entitled to recover $16,474 from Great American, together with interest at the legal rate from April 22, 1974, the date on which Sandy's payment to the building owners established with certainty the amount of the loss it suffered.[5] (See Civ. Code, § 3287; see also *Oil Base, Inc.* v. *Transport Indemn. Co.* (1957) 148 Cal.App.2d 490, 492-493 [306 P.2d 924].)

*Disposition*

The judgment is reversed with instructions to the trial court to enter judgment in favor of appellants in the amount of $16,474 plus interest. Each party to bear its own costs on appeal.

Brown (Gerald), P. J., and Milkes, J.,* concurred.

A petition for a rehearing was denied May 13, 1982, and the opinion was modified to read as printed above.

---

[5]Great American has never contested the *amount* of Sandy's payment to the building owners as being anything more than an accurate measure of the fire damage to the restaurant building.
*Assigned by the Chairperson of the Judicial Council.