In the Matter of D.H. OVERMYER CO., INC. (TEXAS) and D.H. Overmyer Co., Inc. (Ohio), Consolidated Debtors.

Natalie SHAPIRO and Harry I. Subin, individually and as Trustees, doing business as Arcadia Enterprises, Inc., Plaintiffs-Appellees,

v.

D.H. OVERMYER CO., INC. (TEXAS) and D.H. Overmyer Co., Inc. (Ohio), Defendants-Appellants.

Nos. 81 Civ. 5196 (JES), 81 Civ. 6422 (JES). Arrangement Nos. 73 B 1129, 73 B 1158.

United States District Court, S.D. New York.

June 9, 1983.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for plaintiffs-appellees; Jack Weinberg, Lawrence D. Bernfeld, New York City, of counsel.

Robson & Miller, New York City, for defendants-appellants; Morton S. Robson, Michael J. Venditto, Joseph A. Caccamo, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge.

D.H. Overmyer Co., Inc. (Texas) ("DHO Texas") and D.H. Overmyer Co., Inc. (Ohio)

("DHO Ohio") (hereinafter collectively the "Consolidated Debtors") appeal from a judgment and order of Bankruptcy Judge Joel Lewittes terminating their leasehold and charging them, *inter alia,* with the costs of effecting repairs to the leased property, interest on late rent payments and appellees' costs and attorneys' fees.[1]

By written agreement dated June 12, 1970, David L. Subin leased certain warehouse property located in Houston, Texas to DHO Texas for a period of twenty years commencing June 1, 1970.[2] DHO Ohio guaranteed the performance of DHO Texas' obligations under the lease by a written instrument also dated June 12, 1970. Sub-sequent to the execution of these agreements, David Subin transferred his interest in the property to Natalie Shapiro and Harry I. Subin, plaintiffs in the court below (hereinafter the "Creditors").

The lease contains specific provisions obligating the lessee to make all repairs, structural or otherwise, necessary to put and keep the premises in good repair.[3] The lease also provides that, if the lessee fails to make timely rent payments,[4] fails to perform any covenant or obligation under the lease, or files in bankruptcy, the lessor shall, upon proper notice, be entitled to terminate the lease.[5]

1. The appeal is brought pursuant to Bankruptcy Rule 810.

2. The Overmyer companies were in the business of constructing warehouses, selling them to investors, leasing them back under long term leases and subletting them for shorter terms. *See In re D.H. Overmyer Co.,* 383 F.Supp. 21, 22–23 (S.D.N.Y.1974). The transaction between the parties here was such a sale and leaseback. *In re D.H. Overmyer Co. (Texas),* 12 B.R. 777, 780 (Bankr.S.D.N.Y.1981).

3. Sections 6.01 and 6.02 of the lease provide, in pertinent part:
REPAIRS, ALTERATIONS AND IMPROVEMENTS
*Section 6.01.* Landlord shall not be required to furnish any services or facilities to the Demised Premises, and shall have no obligation to Tenant except as expressly provided in this Lease, Tenant hereby assuming the full and sole responsibility for the condition, construction, operation, repair, replacement, maintenance and management of the improvements to the Demised Premises. Tenant hereby expressly waives the right to make repairs at the expense of Landlord as provided in any statute or law in effect at the time of the executing of this Lease or which may be hereafter enacted. Landlord shall not be required to rebuild any improvements on the Demised Premises or to make any repairs, replacements or renewals of any nature or description to the Demised Premises or any improvement thereon, whether ordinary or extraordinary, structural or non-structural, foreseen or unforeseen, or to make any expenditure whatever in connection with this Lease or to maintain the Demised Premises in any way.
*Section 6.02.* Tenant shall, at all times and at its own cost and expense, put, keep, replace and maintain in thorough repair and good, safe and substantial order and condition all buildings and improvements and paved areas erected on the Demised Premises, or forming a part thereof (including all building equipment which is an integral part of the building structure) both inside and outside, structural and non-structural, extraordinary and ordinary and ... Tenant shall likewise at all times and at its own cost and expense put, keep, replace and maintain all personal property and equipment attached to or used in connection with the Demised Premises in full operating condition....

4. *Section 3.01* of the lease provides, in pertinent part:
Tenant shall pay to Landlord, at either his principal office or such other place as Landlord shall specify in writing, rent ... payable on the first day of the month ....

5. Sections 15.01 and 15.02 of the lease provide, in pertinent part:
CONDITIONAL LIMITATIONS—DEFAULT PROVISIONS
*Section 15.01.* Any of the following occurrences or acts shall constitute an event of default under this Lease: (a) if Tenant (regardless of the pendency of any bankruptcy, reorganization, receivership, insolvency or other proceedings, in law, in equity, or before any administrative tribunal, which have or might have the effect of preventing Tenant from complying with the terms of this Lease) shall fail to (i) make any payment of net rent within ten (10) days after Landlord shall have given notice to Tenant that such payment is due, or (ii) make any payment of additional rent or any other sum herein specified to be paid by Tenant, or (iii) observe or perform any of Tenant's other covenants, agreements or obligations hereunder, within thirty (30) days after Landlord shall have given notice to Tenant specifying such default ... or (b) if Tenant shall file for reorganization or for an arrangement pursuant to the Bankruptcy Act of the United States or shall be adjudicated a bankrupt or insolvent or shall make an assignment for the benefit of its credi-

On November 16, 1973, the Consolidated Debtors filed a petition in bankruptcy, a circumstance that would have entitled the Creditors to terminate the lease. The parties, however, stipulated that the pending bankruptcy proceeding would not be considered an event of default so long as the receiver, or his successor, performed all of the lessee's obligations under the lease. *In re D.H. Overmyer Co. (Texas),* 12 B.R. 777, 781 (Bkrtcy.S.D.N.Y.1981). The stipulation was made an order of the bankruptcy court on April 18, 1974. *Id.*

On February 2, 1978 the Creditors brought an adversary proceeding in the bankruptcy court seeking termination of the lease for failure to make timely rent payments. The bankruptcy court denied this request but granted summary judgment to the Creditors with respect to the late rent, ordered payment thereof and further ordered that all future rent payments be made no later than the fifth day of each month. Exhibit C to Stipulation and Order filed August 18, 1981.

The Creditors commenced the instant action in the bankruptcy court in December 1980, contending that the Consolidated Debtors had breached both the April 18, 1974 stipulation and order of the bankruptcy court and the lease by (1) failing to effect repairs to the property including, *inter alia,* replacement of the roofs on all four warehouse buildings situated on the premises; and (2) failing to make timely rent payments. These breaches also were asserted to have reactivated the Creditors' right to rely on the 1973 filing in bankruptcy as an event of default. The Creditors sought an order (1) declaring the subject lease terminated; (2) directing the Consolidated Debtors to quit and surrender possession of the premises; (3) directing the Consolidated Debtors to pay the costs of substantial repairs, and all outstanding rent and interest on late rent payments; and (4) awarding the Creditors their costs, disbursements and attorneys' fees incurred in connection with the adversary proceeding.

The matter was tried to the bankruptcy court in March 1981. The Consolidated Debtors argued that they were not in breach of their obligation to keep the premises in good repair and that they had paid their rent in a timely fashion.

To support their argument that the Consolidated Debtors had breached their duty to repair, the Creditors called three expert witnesses who inspected the premises on several occasions, and who took over 180 photographs and 49 slides, which photographs and slides were received in evidence. The Creditors' first expert, Wayne R. Hamilton, a licensed architect since 1950, testified that, due to a lack of maintenance, the roofs on all four buildings were badly rusted and losing strength. Trial Transcript at 31–43 (hereinafter "Tr. ——"). The other two experts, John L. Bridges, a moisture protection consultant since 1956, and Donald E. Hawkins, a rehabilitation costs consultant and general contractor in business for 25 years, testified that the roofs on all four buildings had to be replaced, Tr. at 294, 437–38, and could not be repaired by patching. Tr. at 613–14.

There was further expert testimony that water had penetrated the buildings through the roofs, run down through the walls and washed away the fill supporting the floor slabs, causing the steel reinforcing rods inside the walls to rust, thereby compromising the walls' structural integrity, Tr. at 47, 76–77, and causing the floors in the buildings to crack and drop, Tr. at 62–69, 454–55.

The Consolidated Debtors called two experts. Erwin Grafe, a licensed engineer

---

tors or shall admit in writing its inability to pay its debts generally as they become due.... *Section 15.02.* If an event of default shall have happened and be continuing, the Landlord shall have the right at his election, then or at any time thereafter while such event of default shall continue, to give Tenant written notice of Landlord's intention to terminate the term of this Lease on a date specified in such notice,

... and on the date specified in any such notice all right, title and interest of Tenant hereunder shall thereupon expire as fully and completely as if the date specified in such notice were the date specifically fixed herein for the expiration of the term of this Lease, and Tenant shall then peaceably and quietly quit and surrender possession of the premises to Landlord ....

who inspected the premises on one occasion for approximately three hours and who took 14 photographs which were admitted into evidence, testified that the roofs could be adequately repaired by replacing individual sections of the roof decks. Tr. at 792. O.B. Spence, a construction manager and a former employee of the Consolidated Debtors, who still receives 20% of his business from the Overmyer companies, testified that he inspected the premises on eight or nine occasions, that he observed the roofs being repaired in a manner which would completely rehabilitate them, Tr. at 831, 842–45, and that, in his opinion, the building walls, with three exceptions, were structurally sound and that any damage thereto could be repaired by scraping, wirebrushing and repainting. Tr. at 852–62.

Judge Lewittes found, *inter alia*, (1) that New York law controlled the interpretation of the lease [6]; (2) that, pursuant to sections 6.01 and 6.02 of the lease, the Consolidated Debtors were obligated to make repairs to the premises and were liable to the Creditors for the costs of those repairs; (3) that the testimony of the Creditors' experts regarding the nature and extent of the repairs which were required to be undertaken and the costs necessarily incurred in connection therewith was more credible and disinterested than the testimony proferred by the Consolidated Debtors' experts; (4) that

the Consolidated Debtors had breached their obligation to keep the premises in good repair; and (5) that the Consolidated Debtors had made late rent payments without interest on at least three occasions. *In re D.H. Overmyer, Co. (Texas),* 12 B.R. 777, 782 (Bkrtcy.S.D.N.Y.1981). The court concluded that, in failing to maintain the premises and to make timely payments of rent, the Consolidated Debtors had indeed breached both the stipulation and the lease, thus reactivating the bankruptcy termination clause. In view of the fact that each of these breaches constituted an event of default pursuant to section 15.01 of the lease, the court held that the severe sanction of forfeiture of the leasehold and the award of costs and attorneys' fees was warranted.

■ The Consolidated Debtors now contend that the court below committed reversible error (1) in finding that the Consolidated Debtors were in default in their repair obligations under the lease; (2) in finding that they were in default in their obligation to pay rent; and (3) in applying New York law. These contentions lack merit.[7]

■ The findings of fact of the bankruptcy court must be sustained unless they are "clearly erroneous." Bankruptcy Rules 752(a) and 810. That is clearly not the case here. Judge Lewittes' findings of fact with regard to the Consolidated Debtors' breach

---

**6.** Judge Lewittes observed that a federal court sitting in diversity would apply the rule of *Klaxon Co. v. Stentor Mfg., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) and refer to the conflicts of law rules of the state in which it sits. While Judge Lewittes found that New York would apply Texas law since, as situs of the property Texas has the most significant contacts with the disputed matter, he nevertheless applied New York law, reasoning that New York law was more developed in the area of obligation to repair. If this was error, it was harmless as he further noted the applicable substantive law of the competing jurisdictions was "virtually" the same. *In re D.H. Overmyer Co. (Texas),* 12 B.R. 777, 785 & n. 14 (Bkrtcy.S. D.N.Y.1981).

**7.** The Consolidated Debtors further contend that, since the Creditors failed to give notice of default as is required by § 15.01(a) of the lease, they may not properly seek its termination.

They also argue that their failure to plead lack of notice as a defense does not constitute a waiver since the Consolidated Creditors have the burden of pleading and proving that proper notice was given.

Upon a review of the exhibits, the Court finds, as did the court below, that the Creditors gave proper notice of the Consolidated Debtors' failure to make timely payment of rent, Exhibit D to Stipulation and Order filed August 18, 1981, and of the need to effect repairs to the roofs of the warehouse buildings, Exhibit E to Stipulation and Order filed August 18, 1981. Moreover, even assuming arguendo that the Creditors had not given proper notice of the Consolidated Debtors' failure to timely pay rent and effect repairs, the Court finds that they still would be entitled to termination of the lease since a Chapter XI filing is an independent event of default for which no notice is required pursuant to § 15.01(b) of the lease. *See* n. 5 *supra.*

of their obligations to repair and pay rent in a timely manner were amply supported by the record. This Court may not and will not substitute its judgment for that of the court below which had an opportunity to hear the testimony of the witnesses and evaluate their demeanor and credibility.

The claim that the bankruptcy court erred in applying New York law has no significance where, as here, the lease contains an express and unambiguous provision obligating the lessee to make repairs. While there is some suggestion that, absent such a specific provision in the lease, the Texas law might be different than New York law with respect to the obligation to make repairs, it is clear that Texas courts will enforce unambiguous, express provisions such as a lessee's covenant "to make repairs," *Weiss v. Mitchell,* 58 S.W.2d 165, 166 (Tex.Civ.App.1933), and to "bear all expenses of repairing and improving the premises during ... occupancy," *Martinez v. Thompson,* 80 Tex. 568, 16 S.W. 334, 335 (Tex.1891). The Consolidated Debtors have cited no authority to the contrary. In any event, the Consolidated Debtors not only failed to make repairs as required by the lease, but also failed to make timely rent payments and filed for bankruptcy as well, all of which clearly justified the termination of the lease.

Finally the award of costs and attorneys' fees is appropriate under both the lease,[8] and the applicable case law. *Weidman v. Tomaselli,* 81 Misc.2d 328, 336–37, 365 N.Y.S.2d 681, 691 (Rockland County Ct.), *aff'd,* 84 Misc.2d 782, 386 N.Y.S.2d 276 (Sup.Ct.App.T.2d Dep't 1975). *Accord Ingram v. Texas Christian University,* 196 S.W. 608, 613 (Tex.Civ.App.1917).

The judgment and order of the court below is affirmed.

It is SO ORDERED.

---

8. Section 15.08 of the lease provides:
   In the event Tenant shall be in default in the performance of any obligation under this Lease and an action shall be brought for the enforce-

ment thereof in which it shall be determined that Tenant was in default, Tenant shall pay to Landlord all expenses incurred in connection therewith including reasonable attorneys' fees.