In re STORAGE TECHNOLOGY
CORPORATION, Debtor.

**Bankruptcy No. 84 B 5377 G.**

United States Bankruptcy Court,
D. Colorado.

Sept. 3, 1985.

Holme, Roberts & Owen by Paul Hyman, Denver, Colo., for debtor.

Katch, Anderson & Wasserman by Michael E. Katch, Denver, Colo., for Sobrato.

## ORDER RE: ASSUMPTION OF NATIONAL SEMICONDUCTOR CORPORATION SUBLEASE; SUMMARY JUDGMENT

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER is before the Court on cross-motions for summary judgment filed by Sobrato Development Companies (Sobrato) and National Semiconductor Corporation (NSC) regarding assumption of two non-residential real property leases. The facts are not in substantial dispute.

Sobrato is the owner of certain property known as Building B, 700 Central Expressway, Santa Clara, California. Sobrato leased this property to the debtor, Storage Technology Corporation (STC), by a lease dated November 30, 1983 (master lease). STC, in turn, subleased the entire first floor of the building, together with 265 parking spaces, to NSC on August 20, 1984 (first floor sublease). In addition, on October 24, 1984, NSC submitted a proposal to STC to sublease the west half of the second floor of the 700 Central Expressway Building (second floor sublease).

On February 20, 1985, STC filed a motion to approve a settlement with Sobrato concerning the 700 Central Expressway property. Under the terms of the settlement, STC was to assume both the first and second floor subleases and assign them to Sobrato. After assignment of the subleases was complete, STC was to reject the master lease. In exchange, Sobrato has agreed to reduce any claim filed under § 502(b)(6)(A) by a factor of four.

Notice of the proposed settlement was given to all creditors. No objections were filed. On March 22, 1985, the Court approved the settlement between STC and Sobrato.

At the time the motion to approve the settlement was filed, STC also moved to assume both the first and second floor subleases. NSC objected. The motions for summary judgment presently before the Court relate to STC's ability to assume the subleases.

NSC filed its motion for summary judgment on June 7, 1985. NSC asserts that STC's rights under the master lease have lapsed or will lapse, precluding STC from assuming the subleases.

Sobrato also filed its motion for summary judgment on June 7, 1985. Sobrato sought a determination that the second floor sublease is enforceable as a matter of law.

## DISCUSSION

Motions for summary judgment are governed by F.R.C.P. 56, which applies via B.R.P. 7056 and 9014. Summary judgment is a drastic remedy, *Jones v. Nelson*, 484 F.2d 1165 (10th Cir.1973), and available only where there exists no genuine issue of material fact. F.R.C.P. 56(c). *Adickes v. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden is on the movant to show that he is entitled to judgment, as a matter of law, beyond all reasonable doubt, *Norton v. Liddel*, 620 F.2d 1375 (10th Cir.1980). While I can determine legal consequence of undisputed facts, I must deny the motion if a triable issue of fact exists. *Carpenters*

& *Millwrights Health Benefit Trust Fund v. Domestic Insulation Co.*, 387 F.Supp. 144 (D.C.Colo.1975).

## I. NSC's Motion for Summary Judgment

NSC's motion for summary judgment contains a three-pronged argument. NSC's first two arguments are premised on the assumption that STC's rejection of the master lease will terminate it. Based on this conclusion, NSC asserts that the subleases also will terminate under California law when the master lease is rejected. Alternatively, NSC asserts that the subleases will terminate by their own terms on rejection of the master lease. Finally, NSC argues that the effect of the STC/Sobrato agreement is an improper partial assumption and partial rejection of the master lease.

The cornerstone of NSC's first two arguments is that STC has or will reject the master lease. In its memorandum, Sobrato suggested that revision of the settlement agreement could cure NSC's objections. On July 3, 1985, STC and Sobrato filed a joint motion to modify the order of March 22, 1985, approving the STC/Sobrato settlement (joint motion). The terms of the amended agreement attached to the joint motion are similar to the original settlement. However, instead of rejecting the master lease, STC would assume it. Sobrato would, in turn, waive its right to cure and demand adequate assurance of future performance. The parties to the joint motion have requested that the Court act on the joint motion only in the event NSC's motion for summary judgment would otherwise be meritorious.

In its reply brief, NSC objects to this procedure. NSC contends that STC has already rejected the master lease and the lease cannot now be assumed.

The threshold issue to be addressed is the effect of rejection of the master lease as contemplated by the original settlement. NSC asserts that rejection of a lease conclusively terminates it. NSC principally relies on *In re Hawaii Dimensions, Inc.*, 39 B.R. 606 (Bankr.Hi.1984), *aff'd.* 47 B.R. 425 (D.C.Hi.1985).

*Hawaii Dimensions* involved the rejection of a lease under which the debtor-in-possession was the lessee. A creditor who held a secured interest in the leasehold, and who was itself the subject of a separate Chapter 11 case, objected to rejection. By the time the final hearing was held, the debtor's rental arrearages had accrued to approximately $100,000.00. The debtor was continuing to lose money, was unsuccessful in attempting to sell the business and was prepared to convert to a Chapter 7 liquidation. Employing the "business judgment test", the court allowed rejection and found that such rejection resulted in termination of the lease. Thus, there was no remaining interest to which the third party's mortgage could attach. The bankruptcy court found that under the Code, hardship on non-debtor parties is not a factor to be weighed in determining whether to approve rejection, citing *In re Chi-Feng Huang*, 23 B.R. 798 (Bankr.App.Panel, 9th Cir.1982); *Borman's, Inc.*, 706 F.2d 187 (6th Cir.1983). Nonetheless, it was noted that rejection would also afford the landlord repossession of property upon which rent had not been paid for a significant period of time.

The district court affirmed both the finding that the debtor-in-possession could reject the lease and the finding that the lease terminated on rejection. The court relied heavily on the language of 502(b)(7),[1] in making its determination that the lease terminates on rejection. The opinion concludes that any other interpretation would unreasonably burden a lessor. *Hawaii Dimensions, supra*, 47 B.R., at p. 428.

The district court in *Hawaii Dimensions* distinguished on its facts the case of *Matter of Garfinkle*, 577 F.2d 901 (5th Cir. 1978). That case involved rejection of a 999 year lease in which the landlord and

---

**1.** With passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, PL 98–353, 98 Stat. 333, 11 U.S.C. § 502(b)(7) is now found at 11 U.S.C. § 502(b)(6).

474

tenant were the same person. The only effect of rejecting the lease would have been to terminate a third party mortgagee's interest in the leasehold. The trustee's practical interest and obligations would have remained unaltered. The Fifth Circuit held that rejection of the lease did not have the effect of terminating it. Instead, rejection only had the effect of removing the lease from the estate. *Matter of Garfinkle, supra,* at 904.

Under the analysis used by the Fifth Circuit, termination of the lease was a totally separate legal issue from rejection. Indeed, the circuit court found that the district court could prevent termination of a lease post-rejection where equitable principles required. *Matter of Garfinkle, supra,* at 905–6. Although *Matter of Garfinkle* was decided under § 70(b) of the Bankruptcy Act, 11 U.S.C. 110(b) (repealed), from my review of § 70(b), it does not appear that the Fifth Circuit's analysis would be materially different under present § 365.

The only other case considering this issue under the Bankruptcy Code is *In re O.P.M. Leasing Services, Inc.,* 30 B.R. 642 (Bankr.S.D.N.Y.1983). In that opinion, Judge Lifland found that when the lease was rejected, it was considered terminated immediately before the filing date. *O.P.M. Leasing, supra,* at p. 650. A close reading of *O.P.M. Leasing,* however, indicates that Judge Lifland was referring to the damage claims arising from the deemed breach of the lease under § 365(g)(1) and not the actual termination of the lease.

As pointed out by attorneys for Sobrato, the apparently conflicting cases regarding the effect of rejection of a lease can be reconciled with one word: equity. In both *Matter of Garfinkle* and *Hawaii Dimensions,* the potential for inequitable results appears to have a large impact on the ultimate result reached. I, therefore, believe it is appropriate for this Court to independently review the structure of the Bankruptcy Code in an attempt to determine the

effect of rejection of a lease, under the circumstances here.

The starting place for analysis of the effect of rejection of a lease must be with § 365(g), which provides:

Except as provided in subsection (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease.

Section 365(g) states that rejection constitutes only a *breach* of the lease. Under the law of the state of California,[2] and virtually every other state, a breach of a real property lease is not synonymous with termination of the lease. *See: California Safety Center, Inc. v. Jax Car Sales of California, Inc.,* 164 Cal.App.3d 992, 211 Cal.Rptr. 39 (1985). Historically, aside from duties to mitigate, a lessor could treat a lease under which the lessee was in default as still being in force and allow the rental obligation to continue to accrue. *Moskovitz v. LeFrancois,* 121 Cal.App. 310, 8 P.2d 1049 (1932), *Guiras v. Harry H. Culver & Co.,* 109 Cal.App. 743, 293 P. 705 (1930). A lessor's ability to allow rental obligations to accrue is now limited, *see:* Cal.Civ.Code § 1951.2, but a breach of a lease in and of itself does not terminate the lease.

The drafters of § 365 apparently knew the difference between breach and termination. Where the legal concept of termination is appropriate that term is used. *See:* § 365(e), (h), (i). § 365(g), however, states that rejection results only in a breach of the lease.

A review of the overall structure of § 365 also indicates that the words "breach" and "termination" were intended to have different meanings. Under subsection (a) the trustee, subject to court approval, may *reject* any lease or executory contract. The trustee's unqualified right to reject leases and executory contracts is limited by subsections (h) and (i) which limit

---

**2.** Since the property in question is located in California, its law is controlling on the issues

before the Court. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

the trustee's right to *terminate* all such leases or contracts.

Subsection (h) protects lessees and time-share interest purchasers. Subsection (i) protects purchasers of real property or time share interests who are in possession. Under either subsections the lessee, time share interest holder or purchaser has the option to either treat the agreement as terminated or remain in possession of the property. With regard to subsections (h) and (i), it is clear that rejection of a lease or executory contract does not result in the *de facto* termination of the agreement.

Both the bankruptcy and district court in *Hawaii Dimensions, supra,* recognized the breach/termination distinction embodied in § 365(h) and (i), but declined to carry this distinction over to all leases and executory contracts. They, instead, relied on their construction of § 502(g) and (b)(6). Section 502(g) states that rejection of an unexpired lease entitles the other party to damages for breach as set forth in § 502(b).

Under § 502(b), the court determines the amount of such claim in accordance with applicable law. Subsections 502(b)(1) through (8) place limits on certain specifically enumerated types of claims. Subsection (b)(6) limits a lessor's damages resulting from the termination of a lease of real property.

I do not believe that § 502(b)(6) indicates that rejection of a lease is synonymous with termination. Use of the word "termination" simply limits the type of claims to which the subsection applies.

The general unsecured claim for damages resulting from termination of the lease is only one component of a lessor's damages. *See*: Cherkis, *Collier Real Estate Transactions and the Bankruptcy Code,* ¶ 3.03[3], p. 3–81 (1984). The lessor may also have administrative priority claims for occupancy of the premises after the filing of the petition. *E.g.: In re Central Rubber Products, Inc.,* 31 B.R. 865 (Bankr.Conn.1983). The word "termination" in § 502(b)(2) merely limits the scope of the subsection and leaves unaffected the claims of a lessor from damages

not arising from termination. *See also: In re International Coins & Currency, Inc.,* 18 B.R. 335, 6 CBC 2d 309 (Bankr.Vt.1982); *Matter of the D.H. Overmyer Co., Inc.,* 12 B.R. 777 (Bankr.S.D.N.Y.1981), *aff'd.* 30 B.R. 823 (D.C.S.D.N.Y.1983).

The authors of *Colliers* also recognize the distinction between rejection and termination of a lease. They state:

> The touchstone of a claim under the 1978 legislation is termination of a lease of real property rather than claims for anticipatory breach of contracts, damages for injury resulting from rejections, or damages under a covenant continued in such lease. Whether, in fact, a lease has terminated is a matter to be determined by the court, for not all events result in termination within the meaning of section 502(b)(6). *Collier on Bankruptcy,* ¶ 502.02, pp. 502–60 (15th Ed.Rel. 14–12/84).

I conclude that rejection of a lease does not have the conclusive effect of terminating the lease. At a minimum, a non-debtor lessor has the option of treating a lease which has been rejected as not having been terminated. While the election to treat the lease as not being terminated may affect the lessor's ability to make a claim against the estate, I believe that option is with the lessor.

At this juncture, the only undisputed fact properly before the Court regarding termination of the master lease was its rejection. Having concluded that rejection of the master lease does not conclusively terminate it, the issue of whether the master lease has terminated appears to be replete with factual issues. NSC's first two arguments contained in its summary judgment motion are premised on the conclusion that the master lease has terminated. Thus, these two arguments must fail.

Turning to the final argument in NSC's motion for summary judgment, NSC asserts that settlement between STC and Sobrato constitutes an attempt partially to assume and partially to reject an executory contract. It is black letter law that the

Bankruptcy Code requires assumption of an entire agreement. *In re Rovine Corp.,* 6 B.R. 661 (W.D.Tenn.1980). Additionally, a debtor cannot avoid the effect of this rule by construing various parts of a transaction as separate agreements when they are clearly interdependent. *In re Holland Enterprises, Inc.,* 25 B.R. 301 (D.C.E.D.N.C. 1982).

 I do not believe that the STC/Sobrato settlement violates the proscription against partial assumptions of leases and executory contracts. This rule has evolved to prevent debtors, ostensibly under the auspices of § 365, from unilaterally rewriting the terms of a contract. In this case, STC is assuming all obligations owed to NSC. NSC's rights and obligations will not be altered. While Sobrato's rights and obligations will be altered, Sobrato has consented to such modification.

Based on the foregoing, NSC's Motion for Summary Judgment is denied.

## II. Sobrato's Motion for Summary Judgment

Sobrato's motion for summary judgment relates to the enforceability of the second floor sublease. Sobrato contends that a document executed by STC and NSC on October 24, 1984, represents an enforceable sublease agreement. The document is a letter agreement entitled "Re: Intent to lease portion of Building 13–700 Central Expressway, Santa Clara". NSC contends that this document is merely an executory agreement to make a lease.

As a preliminary matter, NSC has challenged Sobrato's standing to prosecute the summary judgment motion. Alternatively, NSC has challenged the jurisdiction of this Court. The issues of standing and jurisdiction are issues to which this Court is particularly sensitive. However, I believe that NSC's arguments are without merit.

 As this matter is presently postured, it is before the Court on STC's motion to assume the first and second floor subleases. The motion was made by the debtor herein, STC. Under the terms of

the STC/Sobrato settlement, the subleases will not be assigned until after they are assumed. The assumption of the subleases is clearly a matter arising under Title 11 or arising in or related to a case under Title 11. Thus, the District Court for the District of Colorado has jurisdiction over STC's assumption of the subleases. 28 U.S.C. § 1334. The district court has referred this matter to this Court pursuant to 28 U.S.C. § 157. *See:* General Procedure Order 1984–3 for the District of Colorado.

The determination of whether STC may assume the subleases requires this Court to determine the enforceability of the subleases. This requires reference to the law of the State of California. Simply because resolution of this issue is controlled by state law does not remove the matter from the jurisdiction of this Court. I further find that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

I disagree with NSC's contention that this matter is simply a dispute between two non-debtors (*i.e.* Sobrato and NSC). As stated earlier, this matter is before the Court on STC's motion. Until the subleases have been assumed and assigned, STC has a direct interest in the outcome of this litigation.

 This leads to Sobrato's standing to prosecute the motion for summary judgment. Under 11 U.S.C. § 1109(b), Sobrato is a party in interest which may appear and be heard on the motion to assume. STC's and Sobrato's interests in this matter are similar. STC has apparently allowed Sobrato to carry the primary burden of litigating the matter, thus saving the estate the expense of the attorney's fees which would be involved. STC is the party on whose behalf the summary judgment motion was filed. STC has not objected to Sobrato's standing and has allowed Sobrato to defend against NSC's motion for summary judgment. I, therefore, conclude that Sobrato has standing to prosecute its motion for summary judgment.

Turning to the substance of Sobrato's motion, under California law, if a letter of

intent is merely an agreement to agree, it is not enforceable as a contract, *Store Properties, Inc. v. Neal*, 72 Cal.App.2d 112, 164 P.2d 38 (1945). However, if the parties so intended, a letter of intent constitutes a binding contract. *California Food Services Corp. v. Great American Insurance Co.*, 130 Cal.App.3d 892, 182 Cal.Rptr. 67 (1982). In looking at the instrument as a whole, if the parties have agreed to the essential terms in writing, there is an enforceable contract between them even if they may have contemplated that a more formal agreement would be signed later. *Pacific Improvement Co. v. Jones*, 164 Cal. 260, 128 P. 404 (1912); *California Food Service Corp. v. Great American Ins. Co., supra; Cappelmann v. Young*, 73 Cal.App.2d 49, 165 P.2d 950 (1946).

The parties agree that generally in order for a lease to be valid, there are three essential terms: the term of the lease, the rental rate, and the time and manner of payment. *Levin v. Saroff*, 54 Cal.App. 285, 201 P. 961 (1921); *California Food Service Co. v. Great American Ins. Co., supra*. The parties further agree that these essential elements are sufficiently set forth in the October 24, 1984, letter agreement to constitute a valid lease. NSC, however, asserts that in addition to the above enumerated essential terms, the agreement must extend to all the terms which the parties intend to introduce. *See: Apablasa v. Merritt and Company*, 176 Cal.App.2d 719, 1 Cal.Rptr. 500 (1959).

I agree with NSC's analysis. In cases where parties to a contract have manifested an intent to incorporate additional terms to the contract which have not yet been agreed on, no binding and enforceable contract is formed, regardless of whether agreement has been reached as to "essential elements." The critical issue is whether NSC manifested an intent to introduce additional terms.

In determining whether NSC manifested an intent to incorporate additional terms, it is NSC's "objective intent" which governs. Objective intent is the conclusion which a reasonable person would draw from the outward manifestation of agreement. *Russell v. Union Oil Co.*, 7 Cal. App.3d 110, 86 Cal.Rptr. 424 (1970).

NSC points to two provisions in the letter agreement as demonstrating an intent to insert additional terms. The first provision provides:

This offer is subject to approval by NSC's, STC's and Sobrato Development's (Master Lessor) legal counsel as to the language of the sublease and master lease.

I do not believe that this provision manifests an intent to place additional terms in the lease. This provision refers only to the language of the agreement, not its terms. If any agreement contains all the essential terms, California law will impose a covenant of good faith in giving approval to the language of the contract within the guidelines expressed. *Bleecher v. Conte*, 698 P.2d 1154, 213 Cal.Rptr. 852 (1981); *Kreedman and Co. v. Meyer Bros. Parking—Western Corp.*, 58 Cal.App.3d 173, 130 Cal. Rptr. 41 (1976). The fact that the parties may have contemplated that a more formal agreement would be executed at a later time does not make the preliminary agreement unenforceable. *Mann v. Mueller*, 140 Cal.App.2d 481, 295 P.2d 421 (1956).

The second provision on which NSC relies provides:

NSC will negotiate directly with STC and Sobrato Development Co. regarding improvements.

Attached to NSC's response to Sobrato's summary judgment motion is the affidavit of William J. Rutzler, the manager of corporate real estate for NSC. Mr. Rutzler's affidavit states the anticipated negotiations between NSC, STC and Sobrato concerning tenant improvements were extremely sensitive and crucial to the formation of a viable sublease. It was expected that no sublease could be drafted, approved or executed between NSC and STC until such negotiations were completed.

In this case, I believe that the tenant improvement provision is ambiguous as to whether it represents the final agreement

of the parties or an agreement to agree at some future date. Thus, the testimony of Mr. Rutzler would be admissible to establish the intent of the parties. *Seaman's Direct Buying Serv. v. Standard Oil,* 36 Cal.3d 752, 106 Cal.Rptr. 354, 686 P.2d 1158 (1984).

I, therefore, conclude that a material issue of fact exists and Sobrato's motion for summary judgment must be denied.

IT IS THEREFORE ORDERED:

1) NSC's motion for summary judgment is denied.

2) Sobrato's motion for summary judgment is denied.

3) Pretrial on this matter is set on for Friday, October 11, 1985, at 4:30 p.m. for one-half hour, at which time trial will be set.