ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Plaintiff,

v.

PROTECTION MUTUAL INSURANCE
COMPANY, Defendant.

No. 83 Civ. 8554 (MJL).

United States District Court,
S.D. New York.

Jan. 27, 1986.

Greenhill, Speyer & Thurm by John M. Speyer, New York City, for plaintiff.

Rein, Mound & Cotton by Erica Bunin, New York City, for defendant.

MEMORANDUM OPINION
AND ORDER

LOWE, District Judge.

This is an action between a landlord's insurance company and his tenant's insur-

er. In a previous opinion[1] we granted summary judgment to the defendant and dismissed the action. Presently before the Court is plaintiff's timely motion to reargue pursuant to local rule 3(j). For the reasons stated below we grant reargument in part and upon reconsideration we adhere to our previous determination.

## BACKGROUND

The facts were stated[/] in our previous opinion and are repeated here only in the briefest detail. Familiarity with the previous opinion is assumed.

The dispute centers around commercial property in Manhattan. The property was held by Paul Saurel and the United States Trust Co. ("Trust") and was leased in part to Pellon Corporation ("Pellon") pursuant to a written lease. The plaintiff The St. Paul Fire and Marine Ins. Co. ("St. Paul") insured Trust's interest against fire loss. Protection Mutual Insurance Co., the defendant, ("Protection") issued a general business policy to Pellon protecting both the personalty and the betterments and improvements against loss including fire.

The building was swept by fire. Protection paid Pellon's claim for loss of personal property. Pellon then demanded that Trust make repairs pursuant to ¶ 9(b) of the lease which states:

> If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of the Landlord and the rent until such repairs shall be substantially completed shall be apportioned from the day following the casualty according to the part of the premises which is usable.

When Trust failed to repair, Pellon brought an action against Trust and Trust impleaded St. Paul as a third-party defendant. St. Paul agreed to pay the loss, however, it demanded and received an "assignment" and "subrogation" of Pellon's "rights" against Protection. St. Paul then instituted this action asserting two principal claims. First it claimed that both policies were "excess" to each other and therefore under New York law each insurance company must bear a *pro rata* share of the loss. *See Federal Ins. Co. v. Atlantic National Ins. Co.*, 25 N.Y.2d 71, 302 N.Y. S.2d 769, 250 N.E.2d 193 (1969). Second it claimed that it could sue Protection directly on the Protection policy, based on the assignment subrogation agreement.

In our previous opinion we granted summary judgment on the first claim because the double insurance rule does not apply when the insureds or the insurable interests differ. In the instant case the policies covered different parties and one policy protected a leasehold while the other protected an interest in fee simple. Nothing in the plaintiff's motion for reargument provides any basis for reconsideration of this holding. Accordingly we deny the motion to the extent that it seeks reconsideration of the grant of summary judgment on the first claim.

In the previous opinion we also granted summary judgment to the defendants on the second claim. We held that St. Paul could not recover against Protection as Pellon's subrogee because Pellon and Trust had contracted to shift the risk of loss to Trust.[2] In support of reargument St. Paul puts forth two contentions. First it points to a lease provision which it argues requires each party to look to its own insurance before seeking relief from the other party. Second, it claims that Protection forfeited any rights it may have against Trust as Pellon's subrogee by wrongfully denying Pellon's claim for betterments and

---

**1.** 607 F.Supp. 388 (1985).

**2.** In essence we imposed an equitable bar to the action because liability ultimately rested with St. Paul. Another way to reach the same outcome is to analyze the case from the question of damages. St. Paul's second claim is essentially one to enforce Protection's insurance contract. Generally, in contract, damages are only available for actual loss. Since St. Paul agreed to accept the risk of fire—and in fact is ultimately liable for the loss—it cannot claim to have suffered any loss. As a matter of law St. Paul cannot prove any damages and, thus, it fails to state a claim.

improvements. Because these contentions were not discussed in the previous opinion we grant reargument and upon reconsideration adhere to our previous conclusion.

## DISCUSSION

█ St. Paul's first argument is based on paragraph 9(e) of the lease which states:

Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage for fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery of loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Landlord and Tenant each hereby releases and waives all right of recovery against the other or anyone claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance and also provided that such a policy can be obtained without additional premiums.

St. Paul argues that this provision "unequivocally requires that aside from any other obligations of the landlord or tenant, each party is required to first look to any insurance in its favor, before looking to the other for a loss by fire." Memorandum in Support of Reargument at 6. This argument is without merit.

St. Paul would have us judge ¶ 9(e) without regard to the rest of the lease. When ¶ 9(e) is read in conjunction with the rest of ¶ 9 the plain meaning of the words dictate the conclusion that ¶ 9(e) does not even apply to the instant situation. Paragraph 9 contains numerous subparts which all deal with various fire related contingencies (e.g. partial damage, total destruction, etc.).

Paragraph 9(b) (quoted fully above) unequivically states that fire damages shall be "repaired *by and at the expense of the Landlord.*" Paragraph 9(e) begins "Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage for fire...." This sentence unquestionably refers to liability that the tenant may have under law for causing the fire (*i.e.* for intentionally or negligently causing the fire). This tort based liability has nothing to do with the contract liability which is imposed by the lease. Rather the clause was intended to make clear that the contractual shifting of liability does not affect any legal responsibility for the fire. The next sentence of ¶ 9(e) begins "[n]otwithstanding the foregoing each party shall look first to any insurance in its favor before making any claim against the other party for recovery of loss or damage resulting from fire...." The structure of the paragraph is such that "[n]otwithstanding the foregoing" refers to the first sentence of ¶ 9(e) not to ¶ 9(b). The requirement that the parties look to their own insurance before "... making any claim against the other party ..." refers to the "liability that may exist" under law. It cannot be read to alter the general contractual shifting of risk in ¶ 9(b). If it had been intended to alter ¶ 9(b) it would have been part of ¶ 9(b) or its own subparagraph rather than in the middle of ¶ 9(e) following a clause which preserves tenant's liability at law.

The second sentence of ¶ 9(e) must be read to modify the first sentence of ¶ 9(e). To construe the lease in any other way would not only defy a plain language reading of it but also would render ¶ 9(b) relatively meaningless. The requirement that the parties look to their own insurance before making a claim against the other applies only to tort based liability under the first sentence of ¶ 9(e), not to liability under the lease/contract generally.[3]

---

3. It is at least interesting to note that an internal memorandum of Trust's management Co. explicitly recognized that Landlord is liable for fire damage. The management firm is experienced in lease negotiation and insurance practices. The memo stated in part:

Article 9 of the standard Real Estate Board Loft Lease, now in use, dictates that the land-

■ St. Paul's second ground for reargument is that the Protections' "denial" of Pellon's claim for the betterments and improvements broke the "chain" of liability discussed in our previous opinion. It argues that the settlement effectively resolved Pellon's claim against Trust, thereby estopping Protection from claiming Pellon's rights under the lease. St. Paul contends that the settlement did not breach the insurance contract because the "denial" of Pellon's claim estopped Protection from asserting the defense of destruction of its subrogation rights. Plaintiff's Memo at 5.

As an initial matter we note that on the record before us it does not appear that Protection denied Pellon's claim. Protection argues persuasively that it cannot be said to have denied the claim because no formal claim was ever filed with Protection. (See affidavit of Erica Brunin and exhibit "D" attached thereto.) While there were undoubtedly considerable discussions between Pellon and Protection about the betterments and improvements, Pellon chose to press its contract claim against Trust rather than pressing its insurance claim against Protection. That Protection may have cajoled Pellon to so act is irrelevant. As the Court in *Patent Scaffolding Co. v. William Simpson Construction Co.*, 256 Cal.App.2d 506, 64 Cal.Rptr. 187 (1967) noted in regards to this type of case:

> The result ... does not have the symmetry of perfect justice. The result, however, is not materially different from many other situations in which a person who has suffered a loss for which more than one person is liable may select one from their number to satisfy the obligation, thereby relieving the remaining parties of their liability.

*Id.*, 64 Cal.Rptr. at 194–195 (footnote omitted).

Moreover, Protection did not officially deny the claim but rather it indicated that it would not address the claim. While St. Paul correctly points out that the long delays in processing a claim may have the same effect as denial of the claim, the Court does not believe that that is the case at bar.

■ Even assuming that St. Paul could prove that Protection denied the claim, the settlement agreement between Trust and Pellon cannot be said to break the chain of liability. A release given by an insured (Pellon) does not destroy the insurer's (Protection's) right to subrogation when the released parties (Trust and St. Paul) were on notice that the insurer (Protection) would claim rights by subrogation. *Government Employees Insurance Co. v. Halfpenny*, 103 Misc.2d 128, 425 N.Y.S.2d 212 (Sup.Ct.N.Y.Co.1980). In the case at bar, St. Paul was painfully aware that Protection was relying on the lease provision and that in this litigation it would, as it did, argue that the landlord is liable for the loss. We do not believe that Protection "denied" any claim, but even if it did, Protection's right to subrogation of Pellon's rights under the lease were preserved. As Judge Broderick of this Court held in *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 505 F.Supp. 840, 843 n. 7, (S.D.N.Y.1981), the right of subrogation "requires payment of a debt for which another is primarily responsible." In the case at bar Protection is not primarily responsible for the debt, rather, Trust on its lease and St. Paul on its policy are primarily responsible for the debt.

St. Paul objects to consideration of the lease based on the 1947 case of *Alexandra Restaurant v. New Hampshire Ins. Co.*, 272 A.D. 346, 71 N.Y.S.2d 515 (1st Dept. 1947), *aff'd*, 297 N.Y. 858, 79 N.E.2d 268, (1948). It argues that under *Alexandra* the lease provisions are irrelevant to liability under an insurance policy. In *Alexandra* an insured tenant sued his own insurer for fire loss. The insurer resisted on the grounds that the lease involved provided that the landlord bear the loss. The Appellate Division held that the tenant

---

lord is responsible for repairs resulting from fire damage including the tenants' own improvements and betterments.

I recommend that future leases be modified so that each tenant is responsible for his own improvements and betterments.

could recover regardless of the lease provision.

We have no trouble agreeing with the principal espoused in *Alexandra.* Had Pellon sued Protection we would undoubtedly have held for Pellon, however, in the instant case Pellon chose to pursue its contract rights under the lease. The basis of our previous holding was that had Pellon chosen to do exactly that—sue Protection— Protection would recover against Trust by subrogation. The *Alexandra* decision implicitly recognizes that tenant's insurer may have subrogation rights against the landlord. 71 N.Y.S.2d at 521. The Appellate Division simply chose not to reach the question of subrogation at that time. It reasoned that until the insurer paid the claim the subrogation was not triggered. *Alexandra* certainly cannot be read to say that the contractual shifting of risk in the lease is irrelevant to the ultimate distribution of loss. To the contrary it is fully consistent with the basis of our holding. The distinction is that in *Alexandra* the insured himself—a party who bore no liability—brought the action. In the case at bar, to the contrary, the party bringing the action has agreed bear all the liability.

The decision in *California Food Service Corp. v. Great American Insurance Co.,* 130 Cal.App.3d 892, 182 Cal.Rptr. 67 (Ct. App.1982) properly holds that the lease agreement ultimately sets the rights of the parties. In that case the tenant's insurer paid a fire loss. Then the tenant and its insurer sued the sub-tenant on a provision of the sublease which called for the subtenant to bear the risk of fire loss. The subtenant settled the action by assigning its rights against its insurer to the tenant. The Court held that the subtenant's insurer "would only be liable if [tenant had] an enforceable contractual claim against [subtenant].... Simply put, if [tenant] had no valid claim against [subtenant, subtenant] had no valid claim against its insurer." *Id.,* 182 Cal.Rptr. at 71 (emphasis added). Later the court reaffirmed that the lease establishes the relative liabilities. It stated "We take care to again point out, however, that the relevant contract for these pur-

poses is the one between [tenant] and [subtenant], which establishes [subtenant's] liability...." *Id.,* 182 Cal.Rptr. at 72 n. 3.

While this case has proven somewhat complex, we must adhere to our previous conclusion:

> In the final analysis Trust and Pellon contracted in good faith by lease that Trust should bear the risk of fire loss to the premises. St. Paul and Trust in turn contracted to shift the risk to St. Paul by way of [its] insurance policy. St. Paul received valuable consideration for assuming the risk. It may not now avoid the liability which it willingly contracted to accept.

607 F.Supp. at 392.

### CONCLUSION

The Court grants in part the motion for reargument, and upon reconsideration it adheres to its previous determination.

It Is So Ordered.