HELENE M. ROSENSHEIN, Respondent, v ARNOLD ROSENSHEIN, Appellant.—

Defendant sought to amend his answer to assert a "reconciliation agreement" (captioned a "Pre-Nuptial" agreement), alleged to govern the division of the parties' property, as a defense to plaintiff wife's claim for equitable distribution. While leave to amend pleadings is freely given (CPLR 3025 [b]; *Edenwald Contr. Co. v City of New York*, 60 NY2d 957), Supreme Court's denial of leave to amend was not an abuse of discretion in this instance. The IAS court had previously conducted an evidentiary hearing on an unrelated contempt motion, the transcript of which runs to nearly 100 pages. Defendant's contention that the parties had entered into the agreement was specifically examined and found to be incredible. The purported reconciliation agreement was held to be a forgery. Therefore, general principles of res judicata apply to preclude relitigation of this point.

We take this opportunity to observe that the advent of the Individual Assignment System has simultaneously expanded the application of res judicata, in the broad sense of that term as a reflection of judicial policy *(see,* Siegel, NY Prac § 442), and reduced the necessity to rely entirely on the narrow doctrine of law of the case which "makes a decided point, within a case, binding not only on the parties, but on all other judges of coordinate jurisdiction" (Siegel, NY Prac § 448).

Because IAS "provides for the continuous supervision of each action and proceeding by a single judge" (Uniform Rules for Trial Cts, 22 NYCRR 202.3 [a]), the need to apply a rule which binds a Judge of coordinate jurisdiction is, in theory, obviated. If the instant application had been heard by a different Judge, the question regarding the finality to be ascribed to the finding that the asserted reconciliation agreement was invalid and a forgery would be a paramount consideration. However, because the application was heard by the same court which conducted the earlier hearing, there is no need to guard against the danger that a finding by one Judge on an issue which is collateral to the application under consideration will impede a complete and independent assessment by the court which ultimately considers the merits of the action *(see,* Siegel, NY Prac § 448). As we recently observed in *Boorman v Deutsch* (152 AD2d 48), an attempt to relitigate an issue requires that the court weigh competing policy considerations of fairness to the parties, judicial economy and the consistency and accuracy of the ultimate disposition. Because the relative importance of these considerations varies with the proceeding involved, a flexible approach to the application of res judicata principles is required.

The instant matter well illustrates the judicial economy inherent in the Individual Assignment System's elimination of the duplication of effort entailed when more than one Judge must become acquainted with the facts and issues of a particular case. In entertaining defendant's application to amend his answer, the IAS court was in a unique position to assess its merit in light of the credible evidence regarding the purported reconciliation agreement adduced in the earlier evidentiary hearing.

Where a court concludes that an application for leave to amend a pleading clearly lacks merit, leave is properly denied *(Crimmins Contr. Co. v City of New York,* 74 NY2d 166; *Daniels v Empire-Orr, Inc.,* 151 AD2d 370). Moreover, we find no valid purpose which would be served by requiring a Judge, who has already made up her mind as to a party's credibility with respect to a purported agreement, to entertain the identical issue when that party attempts to establish the terms of the agreement upon trial.

Finally, we note that, in the course of the evidentiary hearing conducted in regard to plaintiff's contempt motion, defendant acknowledged that he had consulted with two handwriting analysts and, as a result, no longer believed the signature which appears on the purported reconciliation

agreement beneath his own to be that of his wife. This concession, together with the absence of any indicia of formal execution *(see, Matter of Sunshine,* 51 AD2d 326, *affd* 40 NY2d 875), entirely supports the IAS court's determination that the document is a forgery. It is also noteworthy that defendant cites no authority to support the proposition, advanced upon his application to amend his answer, that disposition of property in the event of a subsequent divorce may be governed by an oral agreement. Concur—Ellerin, J. P., Smith and Rubin, JJ.

Wallach, J., dissents in a memorandum as follows: I would reverse the order appealed from and grant defendant husband leave to serve an amended answer pleading as a bar to equitable distribution an alleged handwritten memorandum of a reconciliation agreement that provides for an explicit division of assets upon a termination of the marriage. Although concededly not signed by the wife, the agreement is alleged to have been adopted by her in either oral or written form and, because claimed to have been made in September 1979, it need not have complied with the formalities required by Domestic Relations Law § 236 (B) (3) *(McLean v Balkoski,* 125 AD2d 234, 235; *Geiser v Geiser,* 115 AD2d 373, 374).

In the order on appeal, the court held the agreement to be a forgery and nullity by reason of its having previously found it to be such in the course of a contempt hearing brought by the wife against the husband for failure to comply with prior discovery orders; thus, the invalidity of the agreement was said to be "res judicata" and not subject to relitigation. That ruling was error. As plaintiff herself concedes, as a technical matter, the doctrine of res judicata does not apply here, since the adjudication sought to be given preclusive effect was not made in a different litigation; clearly what the court intended was to preclude plaintiff based upon the doctrine of "law of the case" *(see, Matter of McGrath v Gold,* 36 NY2d 406, 413). But, whatever the nomenclature, the so-called "finding" of invalidity that was made in the contempt hearing should not have been given preclusive effect, the court in that hearing having rejected the husband's offer of competent and relevant proof bearing upon the agreement's validity, including:

(1) Bank deposit receipts labeling the parties' contributions separately.

(2) Two wills entirely in the wife's handwriting, demonstrating her acknowledgement of and compliance with the terms of the reconciliation agreement.

(3) Checks drawn on the wife's bank account to the husband's order in repayment of loans and expenditures, demonstrating the segregation and separate ownership of the parties' earnings in accordance with the reconciliation agreement.

The court itself recognized that something less than full consideration was being given to the question of the agreement's validity at the contempt hearing when it stated on the record then made: "We are not trying the validity of this agreement in general", and "we are not trying this agreement now other than to the extent that he relied on it". Indeed, the fundamental issue before the court at that time was whether the husband willfully failed to comply with standing discovery orders; clearly, the agreement's validity was not the central issue, but only the husband's good-faith belief as to its genuineness—and this only as it bore on the degree to which his disobedience was willful. The agreement's validity *vel non* was not essential to that determination, and therefore any judicial assessment thereof should not be given preclusive effect at this later stage of the action *(see, Karameros v Luther,* 279 NY 87). Another instance of the court itself recognizing the tangential character of the issues pertaining to the agreement's validity in the contempt hearing occurred when it rejected an offer of proof by the wife on the following reasoning: "THE COURT: *I think frankly that I made a mistake by allowing this agreement at all.* There are two orders of the court, they are valid orders of the court. There is no divorce action. There is no defense. There is no motion to rescind. There is no motion for a protective order. There was no raising of this issue previously. It seems, and we know in general the law of contempt even if a court order is illegal, it must be obeyed until you do something affirmative to set it aside." (Emphasis added.)

At the very least, it appears that the husband did not have a full and fair opportunity to litigate the validity of the agreement at the contempt hearing, and he should now be given leave to do so upon the trial of the action.