[602 NYS2d 326]

VIACOM INTERNATIONAL, INC., Plaintiff, v MIDTOWN REALTY COMPANY, Respondent, and PHOENIX ASSURANCE COMPANY OF NEW YORK et al., Appellants.

VIACOM INTERNATIONAL, INC., Plaintiff, v MIDTOWN REALTY COMPANY, Appellant, and PHOENIX ASSURANCE COMPANY OF NEW YORK et al., Respondents.

First Department, August 26, 1993

### APPEARANCES OF COUNSEL

*Frederic R. Mindlin* of counsel, New York City *(Lawrence S. Greengrass* and *Rachel J. Yosevitz* with him on the brief; *Mound, Cotton & Wollan,* attorneys), for Phoenix Assurance Company of New York and another.

*Benjamin A. Fleischner* of counsel, New York City *(White, Fleischner, Fino & Wade,* attorneys), for Midtown Realty Company.

### OPINION OF THE COURT

SULLIVAN, J. P.

This action is an outgrowth of the extensive damage caused by an October 13, 1988, multialarm fire that occurred at 1775 Broadway, a Manhattan office building, the eighth, ninth, tenth and eleventh floors of which were occupied at the time by Viacom International, Inc., the plaintiff herein, pursuant to the terms and conditions of a comprehensive lease between Midtown Realty Company, the owner of the building, and Viacom's assignor, MTV Networks, Inc. Viacom had acquired MTV in 1986 and succeeded to all its rights as well as assuming its obligations under the lease. It had purchased insurance for the leased premises for the period from June 30,

1988 to June 30, 1989 from two insurers, Phoenix Assurance Company of New York and American Home Assurance Company, each covering 50% of any casualty loss, including fire, up to $10,000,000.

The fire was allegedly caused by an overheated extension cord located in a Viacom employee's office on the tenth floor, which was substantially damaged, as were, to a lesser extent, the ninth and eleventh floors. Viacom claimed damages to the demised premises, the leasehold improvements and betterments and to its personal property. It is undisputed that it has been reimbursed by Phoenix and American in the approximate sum of $1,500,000, the full amount of the claim, for its personal property loss.

After insisting on immediate repairs to the leasehold improvements to enable it, as it claimed, to continue providing service to its cable subscribers, Viacom agreed to accept Midtown's reconstruction plans and to retain it as general contractor. Viacom alleges that, on several occasions, it made it clear that it would, pursuant to the terms of the lease, hold Midtown liable for the reconstruction costs. On the other hand, Midtown claims that it denied any responsibility therefor and suggested that Viacom look to its insurers. In any event, it is clear that by December of 1988 Viacom was asserting the claim that Midtown was accountable under the lease for the cost of the restoration and repair of the leasehold improvements. This came after Viacom's insurers, Phoenix and American, refused to pay for the cost of these repairs on the ground that Viacom had no insurable interest in the betterments and improvements since paragraph 3 of the lease provides that, upon installation, all fixtures and paneling partitions, railings and like installations in the premises become the property of the landlord.

Six paragraphs of the lease, the first portion of which is preprinted on a form that has been before this Court in other cases (see, e.g., Continental Ins. Co. v Faron Engraving Co., 179 AD2d 360; Interested Underwriters at Lloyds v Ducor's, Inc., 103 AD2d 76, affd 65 NY2d 647), are relevant. As noted, under paragraph 3, all fixtures, paneling and other permanent improvements become the property of Midtown as of their installation and are to remain when the premises are eventually surrendered.

In accordance with paragraph 8, Midtown "shall not be liable for any damage to property of Tenant * * * nor for loss

of or damage to any property of Tenant by theft or otherwise
* * * unless caused by or due to the negligence of [Midtown],
its agents, servants, or employees." Further, Viacom "shall
indemnify and save harmless [Midtown] against and from all
liabilities * * * for which [Midtown] shall not be reimbursed
by insurance."

Paragraph 9 (b) provides that "[i]f the demised premises are
partially damaged or rendered partially unusable by fire or
other casualty, the damages thereto shall be repaired by and
at the expense of" Midtown. Paragraph 9 (e) provides as
follows: "Nothing contained hereinabove shall relieve [Via-
com] from liability that may exist as a result of damage from
fire or other casualty. Notwithstanding the foregoing, each
party shall look first to any insurance in its favor before
making any claim against the other party for recovery for loss
or damage resulting from fire or other casualty, and to the
extent that such insurance is in force and collectible and to
the extent permitted by law, [Viacom and Midtown] each
hereby releases and waives all right of recovery against the
other or any one claiming through or under each of them by
way of subrogation or otherwise. [Viacom] acknowledges that
[Midtown] will not carry insurance on [Viacom]'s furniture
and/or furnishings or any fixtures or equipment, improve-
ments, or appurtenances removable by [Viacom] and agrees
that [Midtown] will not be obligated to repair any damage
thereto or replace the same."

Paragraph 9 is amended by paragraph 57, which adds a
provision that the release and waiver are not effective unless
each party's insurance provides that the release and waiver
"shall not adversely affect said policies or prejudice any right
of the releasor to recover thereunder." In that regard, each of
the policies in question provides that "[a]ny release from
liability entered into by the insured prior to loss hereunder
shall not affect this policy or the right of the insured to
recover hereunder." Such provision satisfies the requirements
of paragraph 57 of the lease with respect to the validity of the
waiver of subrogation clause.

Under paragraph 35, Viacom's assignor, MTV, accepted the
premises "as is", and Midtown was under "no obligation to do
any work or repairs, or make any installation or alteration of
any kind in or to the demised premises except as in this lease
expressly specified." Pursuant to paragraph 44, Viacom is
assigned the "sole responsibility" for the condition of the
premises and is obliged to hold Midtown harmless for any

damage to the premises "except for injury or damage resulting solely from the negligence of" Midtown.

When Midtown, through its insurer, Greater New York Mutual Insurance Company, refused to pay for these repairs, Viacom instituted this action against Midtown, alleging breach of the lease, and its own insurers, Phoenix and American, asserting breach of their policies, seeking in excess of $1,400,000 in unreimbursed expenses in connection with the reconstruction and repair of the improvements. Appearing jointly, the insurers filed an answer and cross claim in subrogation against Midtown with respect to the $1,400,000 they paid for damage to personal property and as to any amounts for which they might be held liable for damage to Viacom's improvements, alleging that Midtown was grossly negligent in providing fire-safety equipment. Specifically, the insurers allege that the fire alarm malfunctioned, causing a "substantial and inordinate" delay in notifying the fire department. Apparently, the insurers' claim is grounded in gross negligence in the view that such a claim would avoid the effect of the waiver of subrogation provision of the lease.

Viacom moved for summary judgment against both Midtown and the insurers, whereupon Midtown cross-moved for summary judgment dismissing the insurers' cross claim based on gross negligence on the basis of fire, elevator and alarm experts' affidavits and investigative reports, which refuted any claim of gross negligence, or, for that matter, ordinary negligence. As clearly set forth in these affidavits and exhibits, the fire alarm was in full operation and the elevators operating properly at the time the fire broke out and the smoke detectors in the elevator corridors were activated, causing the fire alarm to go off, which, in less than one minute, was transmitted to the fire department. The night watchman had made his rounds no less than one hour before the fire's outbreak and had detected no signs of smoke or fire. The proofs showed that Midtown was in absolute compliance with New York City's code requirements, while Viacom was not. The investigative reports showed that the extension cord which caused the fire failed to conform to safety requirements. Midtown also sought dismissal of the cross claim on the basis of the lease's waiver of subrogation clause.

In response, Phoenix and American failed to submit any answering affidavits in support of their claims of gross negligence, merely referring the court to the verified pleadings in various firemen's actions arising out of the same incident. In

addition, the insurers cross-moved for leave to amend their answer to assert a cross claim, *inter alia,* in subrogation for the damage to Viacom's improvements based on breach of contract since, under paragraph 9 (b) of the lease, if the demised premises were rendered partially unusable as a result of fire or other casualty, Midtown was obligated to repair the damage.

On the main motion, the IAS Court construed paragraph 9 (e) to require that Viacom's insurers pay first for any fire damage loss, Midtown being liable only for any loss not covered. Since the insurance covered the entire amount, "there is no need to look to Midtown." Finding the defendant insurers' allegations insufficient to sustain a claim of gross negligence, the IAS Court granted Midtown's cross motion for summary judgment dismissing the cross claims and denied the insurers' cross motion for leave to amend their answer to assert a cross claim in subrogation against Midtown for breach of contract on the ground that paragraph 9 (e), the lease's waiver of subrogation provision, disposed of all contractual as well as negligence claims against Midtown. Thus, with all contract remedies waived, the court found that there was no legal justification for the amendment sought on the basis of paragraph 9 (b). The defendant insurers appealed from the dismissal of their cross claim against Midtown and the denial of leave to serve an amended answer asserting a cross claim based on breach of contract.

Almost one year later, the insurers, citing this Court's decision in *Continental Ins. Co. v Faron Engraving Co.* (179 AD2d 360, *supra),* sought reargument on the ground that the waiver of subrogation clause applied only to a claim based on the destruction, partial or total, of the demised premises and did not affect any other claim, including one for damage to Viacom's property. The court agreed with the insurers that the lease's waiver of subrogation clause does not affect allegations of negligence against a landlord resulting in damage to a tenant's personalty. Finding that a cause of action in ordinary negligence had been stated in the original cross claim, the court reinstated the insurers' negligence cause of action. Midtown appeals from this order. Since the issues of law pertinent to both are identical, the appeals have been consolidated. During the pendency of this appeal and with the assistance of one of this Court's special masters, the defendant insurers and Viacom settled Viacom's damage claim with respect to its improvements and betterments for $1,000,000.

Accordingly, all that remains of this action is the issue of whether the defendant insurers' subrogation cross claim against Midtown sounding in negligence should stand and whether the insurers have a cause of action in subrogation based on contractual breach. The first order, to the extent it denied the insurers leave to assert a cross claim based on breach of contract, should be reversed. The second order should be modified to dismiss the defendant insurers' cross claim based on negligence.

Two of the insurers' causes of action are at issue, both based on their alleged subrogation rights acquired by virtue of their payment to Viacom. One is purportedly premised on Midtown's contractual obligation to repair the damaged leasehold improvements, the other, sounding in negligence, seeks to recover for the damage to Viacom's personalty. In support of their claim to a right of subrogation to Viacom's contractual rights under the lease unaffected by the waiver of subrogation contained in paragraph 9 (e) of the lease, they rely solely on *St. Paul Fire & Mar. Ins. Co. v Protection Mut. Ins. Co.* (644 F Supp 38), which, with respect to a similar issue, held that a waiver of subrogation clause identical to the one in question, paragraph 9 (e) of the standard form of office lease of the Real Estate Board of New York, Inc., applies only to tort-based liability and does not include within its compass contractual liability. The *St. Paul* court looked initially at the first sentence of paragraph 9 (e) which provides, "Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage for fire or other casualty" and reasoned that the liability referred to therein must relate to legally imposed liability, that is, liability as a result of either intentionally or negligently causing the fire, and not to contractual liability imposed under the lease. *(Supra,* at 40.) Thus, the court found, "[T]he clause was intended to make clear that the contractual shifting of liability does not affect any legal responsibility for the fire." *(Supra,* at 40.) Reasoning further, the court found that the structure of the next sentence beginning with the words, "Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery of loss or damage resulting from fire" was such that "[n]otwithstanding the foregoing" refers to the first sentence of paragraph 9 (e), not to 9 (b). Thus, it held, the requirement that the parties look to their own insurance "before making any claim against the other party" refers to the "liability that may exist" under

law, that is, tort liability under the first sentence of paragraph 9 (e), not to liability under the lease generally. Therefore, in accordance with *St. Paul,* the defendant insurers argue that since contractual rights are not included within the scope of the waiver of subrogation clause, Midtown cannot avail itself of the paragraph 9 (e) waiver with respect to its contractual responsibility to repair the fire damage to Viacom's leasehold improvements and that their cross motion for leave to assert a cross claim in subrogation for Midtown's breach of that obligation should be granted. The IAS Court, without explanation, rejected this argument.

We agree with the *St. Paul* court's analysis that the waiver of subrogation clause at issue does not encompass contract claims. Before allowing an amendment to assert such a claim, however, some consideration should be given to its merits. Ordinarily, leave to amend should be liberally granted (CPLR 3025 [b]; *see, e.g., Chicago Tit. Ins. Co. v King,* 59 AD2d 731), unless the proposed pleading clearly lacks merit. *(See, Rosenshein v Rosenshein,* 158 AD2d 268.) In our view, any assessment of the merits should begin with a resolution of the threshold question of whether Viacom's contractual rights under the lease with respect to the repair of its damaged leasehold improvements and betterments passed by way of subrogation to the insurers as a result of their payment of Viacom's loss in that regard.

To the extent that subrogation is implied by operation of law, it " 'is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay.' " *(3105 Grand Corp. v City of New York,* 288 NY 178, 182, quoting Ballantine's Law Dictionary, Subrogation.) As between Midtown and the insurers, each of which received consideration, in the case of the former, rent, the latter, premium, for its respective promise to pay for Viacom's fire damage to its improvements, there is no compelling equitable principle which would require one rather than the other to pay the loss. Unlike the case of the tortfeasor, neither, by its alleged contract breach, caused the underlying loss. Nor, indeed, did either, by refusing to honor its obligation to pay for the loss, cause the other, which eventually did, to suffer a loss. That loss was occasioned by its contractual obligation to Viacom. In short, no equitable principle is served by having one promisor, rather than the other, pay the loss. Thus, had Midtown paid the loss pursuant to its obligation under paragraph 9 (b) of the lease, we would no more recog-

nize a right of subrogation by it, based on Viacom's rights under its policies with the defendant insurers, to proceed against the insurers than we would with respect to the insurers' assertion here of such a right against Midtown. In either case, no equitable consideration would be served by recognizing a right of subrogation based on breach of contract.

In the instant case, however, the right of subrogation is express. Each of the policies in issue provides, "In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the insured's rights of recovery therefor." Thus, the defendant insurers' payment of Viacom's claim for damage to its improvements carries with it, to the extent of such payment, the succession rights to Viacom's claim under paragraph 9 (b) of the lease for the payment of such damage.

New York courts have consistently held that a waiver of subrogation provision contained in a lease negotiated between two sophisticated parties in an arm's length transaction is valid and enforceable provided the intention of the parties is clearly and unequivocally expressed. *(See, e.g., Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153; *Extaza of 34th St. v City Stores Co.,* 62 NY2d 919.) Rather than exempting the parties from liability in violation of statutory proscription applicable to landlords and others in comparable relationships, such as caterers, owners and contractors, building service or maintenance contractors and architects, engineers and surveyors *(see,* General Obligations Law §§ 5-322, 5-322.1, 5-323, 5-324), such clauses merely reflect their allocation of the risk of liability, as between themselves, to third parties through the device of insurance. *(Hogeland v Sibley, Lindsay & Curr Co., supra,* at 160-161; *see, Brentano's, Inc. v Charter Mgt. Corp.,* 46 AD2d 861.) Such provisions, however, will not be enforced to impose a restriction on the subrogee's rights beyond the plain meaning of the waiver clause. *(S.S.D.W. Co. v Brisk Waterproofing Co.,* 76 NY2d 228.) As *St. Paul (supra)* recognized with respect to this particular clause, the waiver is limited to subrogation claims premised on tort liability. In all other respects, the parties' rights and obligations under the lease as to the various contingencies that might arise in such a relationship are clearly spelled out.

Nor, as Midtown argues, does the indemnity provision in lease paragraph 44, whereby Viacom agrees to hold Midtown harmless, except for injury or damage resulting solely from Midtown's negligence, from "all claims, actions, judgments,

damages, liability or expense * * * arising from or out of the use * * * possession or control of the demised premises, or occasioned wholly or in part by an act, omission or other wrongful act" of Viacom, or any other cited lease provision irrefutably demonstrate that the parties to the lease intended that the defendant insurers, rather than Midtown, were to be responsible for the cost of the repair and replacement of Viacom's damaged improvements and betterments. By its express terms, paragraph 44 relates to third-party claims against Midtown arising out of Viacom's possession, use or control of the demised premises, not to the claims of the parties, *inter se.* Thus, since the waiver of subrogation clause does not bar the claim, the defendant insurers should be permitted to assert a cross claim in subrogation based on Midtown's breach of its contractual obligation to repair the damaged leasehold improvements.

By the same token, the defendant insurers' cross claim in subrogation based on Midtown's negligence in causing Viacom to sustain damage to its personal property should not have been reinstated. In granting such relief, the IAS Court relied on this Court's decision in *Continental Ins. Co. v Faron Engraving Co.* (179 AD2d 360, *supra).* In that case, in which the paragraph 9 (e) waiver of subrogation clause was expressly restricted to claims of destruction to the demised premises, the Court held that the waiver of subrogation did not apply to a claim based on damage to the tenant's property caused by the owner's negligence, reasoning that "a waiver of a subrogation clause cannot be enforced beyond the scope of the specified context in which it appears" *(supra,* at 361). Here, the IAS Court found that under paragraph 3 of the lease Viacom's improvements, upon installation, became the property of Midtown. This point was conceded by the defendant insurers before the IAS Court. Thus, even under the *Faron* rationale, the damage claim at issue here in the insurers' negligence subrogation claim relates to fixtures in the demised premises, which are encompassed by paragraph 9, thus triggering the waiver of subrogation provision.

In any event, Midtown, on the basis of its original submission, was entitled to summary judgment on the negligence issue. As noted, the defendant insurers' only opposition consisted of an attorney's affirmation of no probative value and pleadings in unrelated actions against Midtown arising out of the same fire. If, as here, the pleadings are conclusory and do

not set forth evidentiary facts, they are without probative force. *(See, Bethlehem Steel Corp. v Solow,* 51 NY2d 870.) The pleading assertion that a well-maintained alarm system would have reacted in time, aside from its conclusory effect, is unsupported by an expert's affidavit. Where a factual issue "transcends the realm of knowledge that lay persons possess", expert testimony is required. *(Rosen v Salem Truck Leasing,* 108 AD2d 907.) The whole subject of a fire alarm system and its proper response time is surely beyond the ken of the average lay person. Since the defendant insurers failed to lay bare their proofs and demonstrate the existence of triable issues of fact through admissible evidence *(see, Indig v Finkelstein,* 23 NY2d 728, 729; *Tobron Off. Furniture Corp. v King World Prods.,* 161 AD2d 355, 357), Midtown was entitled to a summary judgment dismissal and the cross claim for negligently caused damage to Viacom's personalty should not have been reinstated.

Accordingly, the order of the Supreme Court, New York County (David Saxe, J.), entered on or about September 10, 1991, which, as limited by their brief, denied the defendant insurers' cross motion for leave to serve an amended cross claim alleging a breach of contract, should be reversed, on the law, without costs or disbursements, and the cross motion granted. Order of the same court and Justice, entered on or about January 27, 1993, which granted the defendant insurers' motion to reargue and, on reargument, *inter alia,* denied defendant Midtown Realty Company's motion to dismiss the defendant insurers' cross claim to the extent that the same seeks to recover damages to Viacom's personal property based on negligence, should be modified, on the law, to the extent of dismissing the cross claim sounding in negligence and, except as thus modified, affirmed, without costs or disbursements.

ROSENBERGER, ASCH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about September 10, 1991, reversed, on the law, without costs or disbursements, and the cross motion for leave to serve an amended cross claim granted. Order, same court and Justice entered on or about January 27, 1993, modified, on the law, to the extent of dismissing the cross claim sounding in negligence and, except as thus modified, affirmed, without costs or disbursements.