**FARMINGTON CASUALTY COMPANY, Plaintiff,**

v.

**23RD STREET PROPERTIES CORP. and Williams Real Estate Co., Defendants.**

**No. 98 CIV. 3597 RMB KNF.**

United States District Court, S.D. New York.

Sept. 20, 1999.

Michael B. Golden, Robinson & Cole, New York City, for plaintiff.

Sherman B. Kerner, Francis W. Turner, New York City, for defendant.

## DECISION AND ORDER

BERMAN, District Judge.

Plaintiff Farmington Casualty Company ("Farmington"), as subrogee of Bozell Jacobs Kenyon & Eckhardt, Inc. ("Bozell"), filed this action on or about May 20, 1998 seeking recovery of $142,082.62 from defendants 23rd Street Properties Corp. ("23rd Street" or "Landlord") and Williams Real Estate Co. Inc. ("Williams" or "Managing Agent")(together, "Defendants"). Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

**For the reasons set forth below, Defendants' motion for summary judgment is granted.**

### Background

Bozell occupied the third and fourth floors of a building located at 28–40 West 23rd Street in Manhattan ("Premises"), pursuant to a lease dated February 27, 1984 ("Lease").[1] The building at 28–40 West 23rd Street was owned by defendant 23rd Street; defendant Williams served as managing agent. The Lease was executed by K & E Holdings, Inc.[2] (Bozell's predecessor as tenant) and defendant 23rd

---

1.  The Lease includes a 51 page rider.

2.  K & E Holdings is also referred to as Kenyon & Eckhardt. In 1986, Kenyon & Eckhardt

merged with Bozell & Jacobs, forming Bozell Jacobs Kenyon & Eckhardt, Inc.

Street, as landlord, and subject to certain modifications, is a standard form lease.

In the early morning of Monday, January 20, 1997, Flavio Colella, an employee of the Managing Agent, discovered a flood at the Premises. The flood occurred sometime after 2:00 or 3:00 p.m. on Sunday, January 19, 1997, when the building's heating system failed.[3] Certain sprinkler pipes in the building apparently froze and subsequently burst,[4] flooding the Premises and causing damage to Bozell's property in the amount of $142,082.62. [5]

Bozell submitted a claim for property damage to Farmington which had issued a Commercial Property Insurance policy covering the Premises. Farmington paid Bozell $141,082.62 on its claim.

On or about May 20, 1998, Farmington, as subrogee of Bozell, brought this action to recover $142,082.62, which equals the damages it paid to Bozell plus Bozell's $1000 deductible. Farmington alleges the Landlord and the Managing Agent negligently failed to "exercise reasonable care in ensuring that adequate heat was being furnished to" the Premises, resulting in the flood.[6] (Opp. Br. at 3). Farmington also alleges breach of contract by the Landlord based upon the Landlord's alleged failure to furnish heat to the Premises in accordance with paragraph 28 of the Lease.

**3.** Wilfred Soto, the superintendent of 23–40 West 23rd Street and an employee of 23rd Street, was in the building from "approximately 5–6 a.m. to 2–3 p.m. on Sunday, January 19, 1997" and states, in an affidavit, that "the heating system was working" when he left the building. (Soto Aff. at ¶¶ 3, 8, 10).

**4.** A report from the National Climatic Data Center for Sunday, January 19, 1997, indicates that the average temperature that day in Central Park was 12 degrees Fahrenheit. (Golden Aff. at ¶ 11, Ex. B).

**5.** The breakdown of damages as alleged by Farmington is as follows:

*Relevant Provisions of the Lease*

Paragraph 9(e) of the Lease provides as follows:

> Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, **Landlord and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise.** The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance ... (emphasis added).

Paragraph 8 of the Lease provides as follows:

> Landlord or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or oth-

(a) $51,631.26 for damages and repair of hardwood flooring;
(b) $34,647.18 for office interior finishes;
(c) $24,826.66 for wool carpet in executive hall;
(d) $9,112.52 for office furniture; and
(e) $21,865.00 for office computers. (Kerner Aff., Ex. E).

**6.** In its Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment dated November 24, 1998, "Farmington concedes that its *negligence* claim against the Landlord [as opposed to the Managing Agent] is precluded." (Opp. Br. at 6).

erwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Landlord, its agents, servants or employees . . .

Paragraph 48(C) of the rider to the Lease provides that:

Landlord and Tenant shall each endeavor to secure an appropriate clause in, or an endorsement upon, each fire or extended coverage insurance policy obtained by it and covering the Buildings, the demised premises or the personal property, fixtures and equipment located therein or thereon, pursuant to which the respective insurance companies waive subrogation or permit the insured, prior to any loss, to agree with a third party to waive any claim it might have against such third party. The waiver of subrogation or permission for waiver of any claim hereinbefore referred to shall extend to the agents of each party and its employees . . . If, and to the extent that such waiver or permission can be obtained only upon payment of an additional charge, then the party obtaining such policy shall pay such charge.[7] (emphasis added).

Paragraph 48(F) of the rider to the Lease provides that:

Except as may be prohibited by the terms of the insurance policies carried by it without invalidating such insurance, each party hereby releases the other with respect to any claim (including a claim for negligence) which it might otherwise have against the other party for loss, damage or destruction with respect to its property by fire or other casualty (including rental value or

business interest, as the case may be) occurring during the Term.

Lastly, paragraph 28 of the Lease provides that "[a]s long as this lease is in full force and effect, Landlord shall provide: . . . (e) heat to the demised premises when and as required by law, on business days from 8 a.m. to 7 p.m. and on Saturdays from 8 a.m. to 1 p.m. . . . ."

*Discussion*

Summary Judgment Standard

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See Fran Corp. v. United States,* 164 F.3d 814, 816 (2d Cir.1999). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the Court must " 'resolve all ambiguities and draw all reasonable inferences against the moving party.' " *Fran Corp.,* 164 F.3d at 816 (citation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**Negligence Claim Against Managing Agent**

■ As noted above, Farmington concedes that it has no negligence claim

---

**7.** Paragraph 67 of the rider to the Lease provides that "[i]f and to the extent that any of the provisions of any rider to this lease conflict or are otherwise inconsistent with any of the printed provisions of this lease, whether or not such inconsistency is expressly noted in the rider, the provisions of the rider shall prevail."

against the Landlord by virtue of the waiver of subrogation provision in the Lease. (Opp. Br. at 6). Indeed, interpreting lease provisions almost identical to paragraphs 8 and 9(e) of the Lease at issue here, the New York State Court of Appeals held that "the waiver of subrogation clause contained in the parties lease precludes the negligence claims of their subrogated insurance carriers." *Kaf-Kaf, Inc. v. Rodless Decorations, Inc.,* 90 N.Y.2d 654, 665 N.Y.S.2d 47, 687 N.E.2d 1330, 1331 (1997).[8] Farmington argues, however, that its negligence claim against the Managing Agent survives because, it avers, the waiver of subrogation provision in the Lease does not apply to the Managing Agent. (Opp. Br. at 10–11).

The Court disagrees.

In *General Accident Insurance Company v. 80 Maiden Lane Associates,* 252 A.D.2d 391, 675 N.Y.S.2d 85 (N.Y.App.Div. 1998), paragraph 9(e) of the lease at issue there provided, in pertinent part:

> that in the event of any fire or other casualty loss, each party would look first to any insurance in its favor before making any claim against the other party for such loss and that "Owner and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation."

*Id.* at 86. Analyzing this language, which is almost identical to that of paragraph 9(e) of the Lease at issue in the instant case, the Appellate Division held that "although the defendant managing agent was not specifically mentioned in the anti-subrogation clause, a reading of the lease as a

whole indicates that its provisions are intended to apply to both the owner and its managing agent." *Id.* (citation omitted). *See also Insurance Company of North America v. Borsdorff Services, Inc.,* 225 A.D.2d 494, 639 N.Y.S.2d 816, 817 (N.Y.App.Div.1996)("while SWA was not specifically mentioned in the waiver of subrogation provision of the lease, a reading of the lease, as a whole, demonstrates that it was the intent of the parties to the lease that both the landlord Arnow and the management company, SWA, be protected equally") (citation omitted); *Pilsener Bottling Company, Inc. v. Sunset Park Industrial Associates,* 201 A.D.2d 548, 607 N.Y.S.2d 961, 962 (N.Y.App.Div.1994)("[a] reading of the entire lease illustrates that the parties intended to include agents or employees within the meaning of the term 'Landlord', under the subrogation-waiver clause of the lease. It appears that the parties anticipated that the parties would operate through employees, agents, or servants") (citations omitted). Based upon these authorities, and the Lease as a whole (including, without limitation, paragraph 9(e)), Farmington's negligence claim against the Managing Agent cannot survive the instant motion for summary judgment. In fact, the language in the Lease at issue here appears to be even stronger in favor of dismissal of Farmington's claim than the language reviewed in the cited authorities. Though Farmington challenges it's applicability, paragraph 48(C) of the rider to the Lease explicitly provides that the "waiver of subrogation or permission for waiver of any claim hereinbefore referred to shall extend to the agents of each party and its employees ..." (emphasis added).

---

**8.** "The waiver provision in subsection [9](e) reflects the parties' intention to look first to their insurers for recovery of losses sustained through 'Destruction, Fire and Other Casualty,' and to release any right of recovery 'against the other or any one claiming through or under each of them by way of subrogation or otherwise.' ... [p]resumably, in fixing premiums, the insurers considered that they had permitted their insureds to waive their subrogation rights." *Kaf-Kaf, Inc.,* 687 N.E.2d at 1333.

### Breach of Contract Claim Against Landlord

Conceding that it has no negligence claim against the Landlord (in light of *Kaf–Kaf, Inc.*), Farmington seeks to overcome this hurdle by asserting a breach of contract claim.[9] Thus, Farmington argues that the Landlord breached paragraph 28 of the Lease by failing to furnish heat to the Premises, and for this reason, is liable for the burst pipes and resulting property damage. Farmington's reliance on paragraph 28 of the Lease appears to be an effort to dress its unavailing negligence claim in breach of contract clothing and, thereby, avoid dismissal. This effort does not succeed. *See Kaf–Kaf, Inc.*, 90 N.Y.2d 654, 665 N.Y.S.2d 47, 687 N.E.2d 1330 (1997).

But even analyzed in contract terms, Farmington's claim fails. Paragraph 28(e) of the Lease provides that the Landlord shall provide "heat to the demised premises when and as required by law, on business days from 8 a.m. to 7 p.m. and on Saturdays from 8 a.m. to 1 p.m. . . ." Here, it is undisputed that the heating system failed sometime between 2 to 3 p.m. on Sunday, January 19, 1997 and approximately 7 a.m. on Monday, January 20, 1997,[10] a period of time not covered by paragraph 28(e) of the Lease (which, as noted, required the Landlord to provide heat to the Premises "when and as required by law, on business days from 8 a.m. to 7 p.m. and on Saturdays from 8 a.m. to 1 p.m. . . ."). Thus, the Landlord did not breach paragraph 28 of the Lease. [11]

### Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [12–1] is granted.[12] Clerk to enter judgment.

9. Some cases have distinguished between tort-based liability and contractual liability in the context of a waiver of subrogation provision. *See St. Paul Fire and Marine Insurance Co. v. Protection Mutual Insurance Co.*, 644 F.Supp. 38, 40 (S.D.N.Y.1986)(the first sentence of paragraph 9(e) of the lease refers to "tort based liability [that] has nothing to do with the contract liability which is imposed by the lease"); *Viacomn International, Inc. v. Midtown Realty Co.*, 193 A.D.2d 45, 602 N.Y.S.2d 326, 330 (1993)("[w]e agree with the *St. Paul* court's analysis that the waiver of subrogation clause at issue does not encompass contract claims").

10. In its Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment dated November 24, 1998, Farmington concedes that "[t]he flood occurred after the two boilers that supplied heat to the building completely shut down **sometime after 2:00 p.m. the previous day, Sunday.**" (Opp. Br. at 2)(emphasis added). As noted above, Wilfred Soto, superintendent of 28–40 23rd Street, testified that the heating system was working when he left the building "at approximately 2–3 p.m. on [Sunday] the 19th." (Soto Aff. at 2).

11. By letter dated December 23, 1998, after the motion for summary judgment briefing was completed, Farmington provided the Court with a copy of New York City Administrative Code § 27–740, along with a cover letter stating that "[s]ection 27–740 mandates that the temperature of office space should be a minimum of 70 degrees Fahrenheit." Even if Farmington's submission had been timely, the Court notes that § 27–740 merely provides that "[a]ll habitable or occupiable rooms or spaces, and all other rooms or spaces listed in table 12–1, shall be provided **with means of heating** in accordance with the requirements of this subchapter and reference standard RS 12–1. Heating systems **shall be capable** of producing the required temperatures listed in table 12–1 . . ." (emphasis added).

12. The parties have raised other arguments in their briefs that the Court need not address to reach the decision here.